# Richmond

MARGARET A. PADDOCK v. LESLIE I. MASON.

June 14, 1948.

Record No. 3348.

Present, Hudgins, C. J., and Eggleston, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*J. Benjamin Simmons*, for the plaintiff in error.

*J. Ray Larcombe*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

This writ of error brings under review the validity of a verdict and judgment of $2,500 which Leslie I. Mason, the plaintiff below, has recovered of Margaret A. Paddock in an action for damages for the alleged breach of a contract of employment. The parties will be referred to according to the positions occupied by them, respectively, in the trial court.

The specific assignments of error are to the rulings of the trial court on the instructions offered by the parties, but since the various instructions tendered and refused are not properly made a part of the record, either by a bill of exceptions (Code, section 6252, as amended), or a certificate of exceptions (Code, section 6253, as amended), or in the manner prescribed by Rule 21 of this court, we cannot inquire into the propriety of the lower court's rulings with respect to them.

However, this does not require a dismissal of the writ, as prayed for by the defendant in error. The evidence is properly certified and its sufficiency to sustain the verdict and judgment was adequately challenged in the court below by a written motion to set aside the verdict. It is clear from the record and the briefs before us that the matters relied on here in defense of the action were brought to the attention of the court below. See *Harrison* v. *Commonwealth*, 159 Va. 986, 990, 167 S. E. 251; *Sawyer* v. *Blankenship*, 160 Va. 651, 654, 655, 169 S. E. 551; *Johnson* v. *Kellam*, 162 Va. 757, 766, 175 S. E. 634; *Solomon* v. *Atlantic Coast Line R. Co.*, *ante*, p. 240, 244, 46 S. E. (2d) 369, 370.

The evidence was not transcribed and the narration thereof is far from satisfactory. It presents only a bare sketch of the contract of employment which is the basis of the action. It contains none of the surrounding circumstances which might have thrown some light on the purposes of the agreement and the intent of the parties with respect to it. What we are told is this:

"On Sunday, November 3, 1945, the plaintiff and the defendant entered into an agreement whereby the plaintiff would furnish his services to the defendant as a private detective to attempt to ascertain who was taking defendant's thoroughbred cattle and substituting therefor inferior grade, underweight cattle."

There was testimony on behalf of the plaintiff "that the defendant *wanted him to also be her bodyguard*" (emphasis added), and testimony on behalf of the defendant that she

had not "expressed any desire * * * for the plaintiff to serve in that capacity." This is all the evidence on that subject.

The defendant agreed to pay the plaintiff for his services $2,500 for the first month and $1,500 for the second and third months, respectively. The evidence relates that the plaintiff made to the defendant "representations that the case could undoubtedly be broken in one month."

The defendant testified, and it was not denied, that on the day following that on which the agreement was entered into "she discovered that the theft of her purebred cattle and the substitution of inferior cattle had been accomplished to the extent, as she put it, 'the damage had all been done.' " Therefore, on the afternoon of that day she notified the plaintiff "that his services were not needed," and stopped payment on a check of $1,000 which she had given him "on account of the first month's salary."

There was evidence on behalf of the plaintiff that at the time of his employment by the defendant he was employed by the Office of Price Administration in the District of Columbia, at a salary of $350 per month, and that he gave up this latter employment because of the agreement which he had made with the defendant and before he received her notification that she "would not go through with her contract."

There was further evidence on behalf of the plaintiff that "he was to employ another investigator," George Wilson, at a monthly salary of $350, to assist in the performance of his contract with the defendant. The record is silent as to whether Wilson was actually employed.

There was no evidence as to whether the plaintiff undertook or sought any other employment during the term of his contract with the defendant.

It will be observed that the purpose of the plaintiff's employment was quite vague and indefinite. He was "to attempt to ascertain who was taking defendant's thoroughbred cattle and substituting therefor inferior grade, underweight cattle." It is not disclosed whether the plaintiff was engaged merely for the purpose of preventing further

depredations on the defendant's herd, or for the purpose of apprehending the culprits and bringing them to justice, or for both.

The defendant argues that she was primarily interested in putting a stop to the substitution of inferior cattle for her thoroughbred stock, and that under the terms of the contract the plaintiff was employed merely to prevent such further depredations. She says that when she discovered on the next day that at the time she employed the plaintiff "the damage had all been done," the subject matter of the contract had ceased to exist, and hence, under the principles to be discussed, she was excused from performing the agreement.

The plaintiff, on the other hand, argues that under the terms of the contract he was employed both to put an end to the depredations and to bring the guilty parties to justice, and that the defendant's refusal to allow him to perform the contract was occasioned by her change of mind, her desire to abrogate the contract, rather than the nonexistence of the subject matter. Hence, he says, the case presents the usual questions involved in an action for damages for the breach by the employer of a contract of employment.

It is impossible to tell from the meager record before us in which of the two categories the case falls. But, in our opinion, the evidence does not support a verdict and judgment of $2,500 in favor of the plaintiff.

The trial court should have submitted to the jury, under proper instructions, the theories of both the plaintiff and the defendant.

Ordinarily, when the instructions granted below are not certified to us, we presume that the jury was properly instructed. *Harrison* v. *Commonwealth, supra* (159 Va., at page 992). But here it is apparent from the briefs and the argument before us that the defendant's theory of the case—that is, her claim that she was excused from making the payments required under the contract because the purpose of the employment had ceased to exist—was not submitted to the jury. The case was submitted under the

plaintiff's theory that only a breach of the contract of employment was involved.

In *Housing Authority* v. *East Tennessee Light, etc., Co.*, 183 Va. 64, 31 S. E. (2d) 273, we recognized and approved the principle that impossibility of performance due to the failure or nonexistence of a certain state of affairs, the continued existence of which was contemplated by both parties as the basis of their contract, but not contracted for, excuses the promisor. We quoted with approval (183 Va., at pages 73, 74, 31 S. E. (2d), at page 277) this succinct statement of the principle found in 17 C. J. S., Contracts, section 464, pp. 956, 957:

"Where from the nature of the contract it is evident that the parties contracted on the basis of the continued existence of the person or thing, condition or state of things, to which it relates, the subsequent perishing of the person or thing, or cessation of existence of the condition, will excuse the performance, a condition to such effect being implied, in spite of the fact that the promise may have been unqualified."

Other leading authorities on the subject are collected in that opinion.

In the case before us the defendant contends that she was excused from performing the contract of employment, because unknown both to her and to the plaintiff, at the time the agreement was entered into there was an impossibility of performance in that the subject matter of the contract no longer existed. In this situation, she says, due to a mutual mistake of fact, there was no agreement. There is ample authority to support this legal proposition.

In *Virginia Iron, etc., Co.* v. *Graham*, 124 Va. 692, 699, 98 S. E. 659, we cited with approval the following statement in 13 C. J., p. 376 (17 C. J. S., Contracts, section 144-c, p. 499): "Where certain facts assumed by both parties are the basis of a contract, and it subsequently appears that such facts did not exist, there is no agreement."

The principle is thus expressed in 12 Am. Jur., Contracts, section 131, p. 622: " * * * Where parties enter into an

agreement upon the common assumption that a particular and essential state of things exists with reference to a substantial subject matter, the nonexistence of that state of things, through default of neither party, prevents the accrual of liability."

In other words, "A mutual mistake as to the existence or identity of the subject matter of an agreement prevents the creation of contractual liability." 12 Am. Jur., Contracts, section 131, p. 622. See also, Restatement of the Law, Contracts, section 456, p. 960; 17 C. J. S., Contracts, section 462, p. 952.

The defense of impossibility of performance, under the principles stated, may be asserted in an action at law as well as a suit in equity. 12 Am. Jur., Contracts, section 131, p. 622. See also, *Housing Authority* v. *East Tennessee Light, etc., Co., supra.*

The principles have been frequently applied in contracts of employment such as that now under consideration. See 35 Am. Jur., Master and Servant, section 31, p. 467, and authorities there cited.

It necessarily follows from what has been said that if, due to impossibility of performance, there was no meeting of the minds, and, hence, no contract, neither party is liable to the other for damages for failure to perform. If this were not so one who has been excused from performing a contract because of the impossibility of its performance, would be in precisely the same position as one who had breached it.

The principle is thus expressed in Williston on Contracts, Rev. Ed., Vol. 6, section 1972, p. 5536: "If performance on one side or the other of a contract becomes excusably impossible while the transaction is still wholly executory on both sides, in the absence of assumption of this risk, not only is the contract discharged but neither party is subject to further obligation of any kind." See also, Restatement of the Law, Contracts, section 456, p. 847, section 461, p. 865; *Rossville Alcohol, etc., Corp.* v. *Steel Const. Co.,* 104 Ind. App. 515, 8 N. E. (2d) 1016.

In *Housing Authority* v. *East Tennessee Light, etc., Co., supra,* an action at law was instituted to recover damages for the breach of a contract to furnish natural gas from adjacent wells. During the term of the contract the source of supply was exhausted and it became necessary for the plaintiff to convert its heating equipment, at considerable expense, to conform to the use of other fuel. The main element of damages claimed by the plaintiff was the cost of this conversion. We affirmed a verdict and judgment in favor of the defendant, predicated upon the defense that the nonexistence of the subject matter of the contract had rendered its performance impossible.

The burden of proof to establish excusable impossibility of performance of a contract is on him who asserts it. Williston on Contracts, Rev. Ed., Vol. 6, section 1937, p. 5425. See also, *Housing Authority* v. *East Tennessee Light, etc., Co., supra.*

We are of opinion that the case should be remanded for a new trial in order that the terms of the contract of employment may be developed more fully and its true meaning and purposes determined.

Whether the defense of impossibility of performance is applicable to the oral agreement here involved is a mixed question of law and fact.

If the evidence thereon be conflicting, the terms of the contract, that is, just what the parties agreed to, will be for the jury.

While ordinarily the interpretation of an agreement is for the court, if the true meaning of the terms depend upon controverted facts and conflicting evidence, it may be for the jury upon proper instructions. *Walker* v. *Gateway Milling Co.,* 121 Va. 217, 227, 92 S. E. 826; *Geoghegan Sons & Co.* v. *Arbuckle Bros.,* 139 Va. 92, 101, 123 S. E. 387, 36 A. L. R. 399.

Whether, as claimed by the defendant, the subject matter of the contract had ceased to exist at the time the agreement was entered into, will, under conflicting evidence, be for the jury.

Should it develop upon a new trial that, as claimed by the plaintiff, the case is an ordinary action for damages for breach of a contract of employment, the principles to be applied are relatively simple.

The measure of damages recoverable is the actual loss or damage sustained on account of the breach, which is ordinarily the difference between what the plaintiff would have earned under the contract of employment, and the wages which he has, or by the exercise of reasonable diligence could have, earned in other employment subsequent to his discharge. *Standard Laundry Service* v. *Pastelnick*, 166 Va. 125, 129, 184 S. E. 193, 195. See also, 35 Am. Jur., Master and Servant, section 54, p. 486; 25 C. J. S., Damages, section 79, p. 581.

By the great weight of authority "Mitigation of damages is an affirmative defense, and its burden is entirely on the contract breaker." *Martin* v. *Board of Education*, 120 W. Va. 621, 199 S. E. 887, 889.

As is said in Williston on Contracts, Rev. Ed., Vol. 5, section 1360, p. 3816: "It seems to be the generally accepted rule that the burden of proof is upon the defendant to show that the plaintiff either found, or, by the exercise of proper industry in the search, could have procured other employment of an approximately similar kind reasonably adapted to his abilities, and that in absence of such proof the plaintiff is entitled to recover the salary fixed by the contract." See also, 35 Am. Jur., Master and Servant, section 60, p. 494; 25 C. J. S., Damages, section 144-e, p. 791; Annotation, 134 A. L. R. 257 *ff.*, collecting numerous cases.

Mr. Williston suggests that a more logical statement of the rule is that made by Judge Cardozo in *McClelland* v. *Climax Hosiery Mills*, 252 N. Y. 347, 358, 169 N. E. 605, 609, in which it is said that the burden is on the master "of going forward with evidence" after the servant has made out a *prima facie* case, but that "This does not mean that he has the burden of proof in the strict sense, * * * ." Williston on Contracts, Rev. Ed., Vol. 5, section 1360, p. 3817, note 2.

The practical result would be the same under either statement of the rule, in that the plaintiff employee would make out a *prima facie* case upon proof of a valid contract, fixing the price to be paid for his services, and its breach. See *Martin* v. *Board of Education, supra.*

The judgment complained of is reversed and the case is remanded for a new trial in conformity with the views here expressed.

*Reversed and remanded.*