**Dr. Sohair F. SABET, Plaintiff,**

v.

**EASTERN VIRGINIA MEDICAL AUTHORITY, c/o Dr. William D. Mayer, President, Board of Commissioners of the Eastern Virginia Medical Authority, c/o Lawrence Smith, Chairman, Lawrence Smith, in his Official Capacity as President of the Eastern Virginia Medical Authority, Dr. William D. Mayer, in his Official Capacity as President of the Eastern Virginia Medical Authority, and Donald J. Merchant, Ph.D., Chairman of the Department of Microbiology and Immunology of Eastern Virginia Medical School, Defendants.**

Civ. A. No. 84–294–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 22, 1985.

Stanley E. Sacks, Robert L. Samuel, Jr., Sacks, Sacks & Larkin, Norfolk, Va., for plaintiff.

Richard A. Saunders, Furniss, Davis and Rashkind, Norfolk, Va., for defendants.

## OPINION

DOUMAR, District Judge.

The plaintiff, Dr. Sohair F. Sabet, a former member of the faculty of the Medical School operated by the Eastern Virginia Medical Authority (EVMA), filed this action allegedly pursuant to 28 U.S.C. §§ 1331, 1343(3) and 1343(4) and 42 U.S.C. § 1983 against EVMA, its Board, its officers and Donald J. Merchant, her supervisor and the person by whom she was hired.

The plaintiff claims that the defendants violated her fourteenth amendment due process rights when her teaching contract was not renewed. She also claims through an alleged pendent state cause of action that the defendants fraudulently misrepresented their tenure policy at the time of her initial hiring, causing her damages. The plaintiff does not seek reinstatement but seeks monetary damages of $4,000,000.00.

The defendants collectively filed several motions to dismiss and/or motions for summary judgment, and this matter was heard on oral argument. Upon consideration of the argument, the memoranda of counsel, the briefs, depositions and documents, the Court hereby DISMISSES this action entering judgment for the defendants for the reasons below.

## THE PARTIES' POSITIONS

The plaintiff, Dr. Sohair Sabet, taught and performed research in the microbiology field at the Eastern Virginia Medical School (EVMS). The defendant, Eastern Virginia Medical Authority (EVMA), is a regional authority located in Norfolk, Virginia which, *inter alia*, operates the medical school which first accepted students in 1973.

In May, 1982 the plaintiff was sent, by letter, two years notice that her then current three-year faculty contract would not be renewed. The letter did not state any reason for the nonrenewal.

Relying upon 42 U.S.C. § 1983, plaintiff claims in Counts I and II of her complaint that she obtained certain lifetime tenure property rights;[1] and, therefore, that her termination without "cause" and without a hearing was in violation of her due process rights under the fourteenth amendment. Count III asserts a pendent state law claim of fraudulent misrepresentation, alleging that the medical school's officials concealed the true nature of tenure rights.

The defendants deny that there is any lifetime tenure of any nature at the medical school. In response to the plaintiff's allegations, they set forth the EVMS policy with regard to tenure adopted January 15, 1973 which provides that all EVMS full-time faculty are employed under either two, three or five year contracts. These provisions were in the faculty handbook under the heading "Tenure Policy". Moreover, the defendants claim that the decision not to renew Dr. Sabet's contract was one of many tough decisions which were a product of the 1982 recession. Under Virginia law, EVMA was required to achieve a balanced operating budget. In giving notice of nonrenewal to the plaintiff and other faculty members, the administration sought to streamline the faculty while retaining as many of the core curriculum courses as possible.

---

1. The Court's references to lifetime tenure indicate a tenure program where employment continues indefinitely, and may only be terminated for "cause". This is in contrast to a limited contractual tenure program continuing through a fixed period wherein employment may be terminated.

It is uncontested that Dr. Sabet was qualified for her position and that her nonrenewal was unrelated to her job performance.

### BACKGROUND

Dr. Sohair Sabet is a microbiologist who received her Ph.D. from the University of Virginia Medical School in Charlottesville, Virginia in 1972. At Massachusetts Institute of Technology between 1972 and 1974 she performed post-doctorate work in molecular biology.

Beginning September 1974 the plaintiff was employed as an Assistant Professor in the Microbiology Department of the Medical College of Virginia (MCV) in Richmond. (Complaint at p. 2). As part of her job search prior to her MCV employment, she had written the Chairman of the Microbiology Department at EVMS, Dr. Merchant, a defendant herein. She also visited with Dr. Merchant in 1973; however, there were no openings at EVMS at that time. (Deposition of plaintiff, pp. 12–13). As a partial consequence, she accepted the MCV position.

In January, 1976, Dr. Merchant wrote the plaintiff and invited her to present a seminar at EVMS on her research field. Dr. Sabet was the seminar coordinator at MCV, as well as a faculty member, and had been in contact with EVMS officials prior to that time on other similar affairs. It is clear that on this occasion there was an available position in the Department of Microbiology and Immunology at EVMS. Extending an invitation to present a seminar, and viewing the actual seminar, is one way in which a medical school determines its interest in a potential faculty member. (Deposition of plaintiff, pp. 24–25).

By letter dated August 14, 1976 the plaintiff was offered a full-time position, effective May, 1977, in EVMS' Microbiology and Immunology Department, while she was still at MCV. (Complaint at p. 7).

According to the complaint at paragraphs 18, 19 and 26:

18. That subsequent thereto, at the end of the plaintiff's first year of employment on the faculty of the Eastern Virginia Medical School, she was promoted from Assistant Professor to Associate Professor in the Department of Microbiology of the said Eastern Virginia Medical School and appointed for a three year term in such position.

19. Thereafter, on September 20, 1981, plaintiff was advised by the defendants that she had been reappointed as a faculty member of the said Eastern Virginia Medical School with the rank of Associate Professor for the period of July 1, 1981, through June 30, 1984.

\* \* \* \* \* \*

26. Notwithstanding her tenured position on the faculty of the said defendant's medical school, the plaintiff was advised in writing by said defendants on May 5, 1982, that upon the expiration of her current faculty appointment contract on June 30, 1984, said contract would not be renewed....

Though the plaintiff's employment contracts were all entered on a one year or three year term, she claims that she believed she was hired on a tenure-track as contemplated by the American Association of University Professors (AAUP) guidelines on academic tenure.[2] These guide-

2. *"Academic Tenure*
(a) After the expiration of a probationary period, teachers or investigators should have permanent or continuous tenure, and their service should be terminated only for adequate cause, except in the case of retirement for age, or under extraordinary circumstances because of financial exigencies.
In the interpretation of this principal it is understood that the following represents acceptable academic practice:

(1) The precise terms and conditions of every appointment should be stated in writing and be in the possession of both institution and teacher before the appointment is consummated.
(2) Beginning with appointment to the rank of full-time instructor or a higher rank, the probationary period should not exceed seven years, including within this period full-time service in all institutions of higher education; but subject to the proviso that when, after a term of probationary service of more than

lines are adopted at many, but not all, colleges. EVMA has not adopted these AAUP tenure guidelines. The AAUP provision recognizes a probationary employment period, followed by a "lifetime" tenure terminable only for cause, retirement or financial exigency. On the other hand, the defendants' answer cites the EVMS faculty handbook provision which expressly rejects AAUP tenure guidelines and reflects a limited two, three and five year contractual tenure at EVMS:

SUBJECT: TENURE POLICY

1. Only full-time faculty may attain tenured status. (Full-time faculty implies 100 per cent of the funding and time is controlled through the Dean's Office.)

2. Any faculty appointment may be made without tenure, provided the appointment is so designated by the Dean and the Commissioners.

3. Tenure status will be conferred after a probationary period as follows:

(a) Professors at the time of their appointment.

(b) Associate professors at the time of their appointment.

(c) Assistant professors after two years employment.

4. *Tenure* in the Eastern Virginia Medical School *is limited according to the following schedule:*

(a) Professor—five years.

(b) Associate professor—three years.

(c) Assistant professor—two years.

5. Annual appointments will be made on a fiscal year basis from July 1st to June 30th. Tenured appointments will ordinarily be from July 1st to June 30th of the separation year.

6. Renewal of annual appointments will be made by March 21st of each year. Renewal of tenured appointments will be made by December 31st of the last fiscal year of the tenured period.

7. Appointments occurring after July 1st of any fiscal year will be counted as a full year for purposes of tenure status if made before December 21st of that fiscal year. If made after January 1st, the tenured period will be counted as of the succeeding July 1st for renewal purposes.

8. Accept (sic) as outlined here for tenure purposes, the "Policy, Documents, and Reports" of the American Association of University Professors as a guideline for faculty purposes. Variations of it will be established by the Norfolk Area Medical Center Commissioners if indicated.

(emphasis added). Plaintiff states in her deposition that by April 1978 she learned that EVMS retained its faculty exclusively under contracts of varying lengths (deposition of plaintiff, p. 37), pursuant to the faculty handbook provision and that there was no lifetime tenure. This case must be based on whether EVMS misrepresented its true tenure policy prior to 1978 to the plaintiff and/or whether EVMS fostered some sort of *de facto* tenure program with the plaintiff in spite of the handbook provisions.

A defendant who moves for summary judgment such as in this case bears the burden of showing both the absence of a genuine issue of fact and that judgment is warranted as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Phoenix Savings & Loan, Inc. v. Aetna Casualty & Surety Co.*, 381 F.2d 245 (4th Cir.1967). The reviewing court must draw inferences most favorable to the party opposing the motion when deciding whether this showing has been made from the documentary materials before it. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Furthermore, the op-

three years in one or more institutions, a teacher is called to another institution it may be agreed in writing that his new appointment is for a probationary period of not more than four years, even though thereby the person's total probationary period in the academic profession is extended beyond the normal maximum of seven years. Notice should be given at least one year prior to the expiration of the probationary period if the teacher is not to be continued in service after the expiration of that period."

Complaint at p. 5.

posing party is entitled to be given the benefit of all favorable legal theories flowing from the evidence. *Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir. 1979). Thus, summary judgment is inappropriate if there is any genuine factual issue which would affect the decision or if there is any dispute over the reasonable inferences drawn from the undisputed facts in the record. *Morrison v. Nissan Motor Co., Ltd.,* 601 F.2d 139 (4th Cir. 1979).

## I. COUNT III: THE FRAUDULENT MISREPRESENTATION CLAIM

Count III of the plaintiff's complaint alleges that the defendant EVMA and its agents "recklessly and negligently failed and refused" to inform the plaintiff "before she accepted employment" at EVMS that the defendants did not "have a tenure policy ... substantially in compliance and in accordance with that...endorsed by the American Association of University Professors...." (Complaint at p. 12–13). The defendants have moved to dismiss the claim under the applicable statute of limitations.

The plaintiff has imbued and saturated her argument with the notion that since EVMS did not adopt the AAUP tenure guidelines, it was therefore under an affirmative duty to inform her of this fact. Stepping back from this questionable substantive claim, the Court first examines the statute of limitations bar.

In her deposition the plaintiff relates that in "early 1978" she was assigned to an ad hoc committee on governance at EVMS as a faculty senator. Her deposition also indicates that this committee discussed administration and faculty relations and the tenure policy at EVMS. (Deposition of plaintiff, pp. 37–40). She relates that in "March or April '78" she first knew through the committee, and/or Dr. Merchant, the true limited contractual tenure policy established at EVMS. Describing when she first discovered the limited contractual employment she stated:

A. Yes, and on serving on that committee I had to get ahold of a faculty hand-

book and also we were discussing tenure and tenure positions at Eastern Virginia Medical School. And that is when the word limited tenure came to my attention and this two-year or three-year or five-year bit.

Q. Two years as assistant professor and three years as associate and five years full professorship?

A. Yes. I didn't understand what that meant. I knew what tenure meant because I have always been associated with schools with tenure, but I didn't know—

Q. Your first knowledge of EVMA's limited tenure or when you're looking at this faculty handbook would have been March or April of '78?

A. Yes.

The question then becomes, whether the accrual of her cause of action was outside the applicable limitations period.

■ The complaint in this matter was filed on April 30, 1984. The plaintiff concedes that by April 1978 she understood the nature of her employment at EVMS. Any fraudulent concealment or misrepresentation made by the defendants prior to, or after, her May, 1977 employment was then fully known. Under the law of fraud in Virginia, plaintiff's cause of action began to accrue, at the latest, from the time of her discovery as to the true nature of EVMS tenure policy in April 1978. *See e.g., Blackwelder v. Millman,* 522 F.2d 766, 774 (4th Cir.1975); *Stevens v. Abbott, Proctor & Paine,* 288 F.Supp. 836, 844 (E.D.Va.1968). Virginia law holds that a fraud cause of action accrues at law and at equity at the time such fraud is discovered or by due diligence ought to have been discovered. *Stevens, supra,* 288 F.Supp. at 844.

■ Plaintiff's fraudulent concealment claim arises under state tort law. It is brought as a pendent claim, linked with Counts I and II, both of which allege jurisdiction in this Court pursuant to 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. See *United Mine Workers v. Gibbs,* 383 U.S. 715, 722, 86 S.Ct. 1130, 1136, 16 L.Ed.2d 218

(1966). The proper statute of limitation for a pendent state law claim is found in the laws of the state in which the federal court sits. *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Therefore, the Virginia statute of limitations is applicable.

Regrettably, there is no Virginia statute of limitations which expressly mentions fraud actions at the present date, so the appropriate period is subject to some debate. Many fraud cases were decided under prior Code Section 8–24, *see, e.g. Maine v. Leonard*, 353 F.Supp. 968 (W.D.Va. 1973), but these are not binding since the Virginia Code pertaining to causes of action, statutes of limitations and procedure was revamped in 1977. From Section 8–24 evolved Va Code Sec. 8.01–248,[3] (one year period where "no limitation is otherwise prescribed"), and Va.Code Sec. 8.01–243[4] (five year limitations period for "injury to property"). Section 8–24 was expressed in terms of "survival" of the action and many of the prior cases examined both the one and five year periods, determining survivability according to the facts of the fraud action. *See e.g., Blackwelder, supra;* 522 F.2d at 773–74; *Reid v. Madison*, 455 F.Supp. 1066, 1068 (E.D.Va.1978); *Progressive Realty Corp. v. Meador,* 197 Va. 807, 91 S.E.2d 645 (1956).

This Court expressly declines to enter the limitation period fray. Under the undisputed facts as construed most favorably to the plaintiff, the concealment or fraud cause of action accrued and was ripe by April 1978. The complaint was filed April 30, 1984, approximately six years later. ■ As the plaintiff's own deposition established that she was aware of EVMS

tenure policy by April 1978, it is clear that under either limitations period, this claim is time barred. The Court, by discussing the statute of limitations, expressly declines to offer any view as to whether the alleged concealment and so-called fraud rises to the status of a cause of action under Virginia law.

## II. COUNTS I AND II: DUE PROCESS PROPERTY CLAIMS

Not surprisingly, the parties construe the same undisputed facts surrounding this claim and reach opposite conclusions. We are, of course, obligated to view the facts in the light most favorable to the plaintiff. We find, however, that as a matter of law the due process claims fail to rise to a cause of action and sustain the defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6). In addition, the due process claims are barred by the statute of limitations.

### A.

Counts I and II are predicated on the argument that the plaintiff had or should have attained AAUP lifetime tenure at EVMS. She further alleges that this lifetime tenure was a property interest recognized by the fourteenth amendment of the Constitution. Specifically, the complaint claims a proper hearing was never accorded to her and that her termination was arbitrary and capricious. The plaintiff seeks four million dollars in compensatory damages.

As the plaintiff has fired off several inconsistent positions, the defendants have likewise launched a fusillade of alternative

---

3. § 8.01–248. Personal actions for which no other limitation is specified.
   Every personal action, for which no limitation is otherwise prescribed, shall be brought within one year after the right to bring such action has accrued.

4. § 8.01–243. Personal action for injury to person or property generally.
   A. Unless otherwise provided by statute, every action for personal injuries, whatever the theory of recovery, except as provided in B

hereof, shall be brought within two years next after the cause of action shall have accrued.
   B. Every action for injury to property, including actions by a parent or guardian of an infant against a tort-feasor for expenses of curing or attempting to cure such infant from the result of a personal injury or loss of services of such infant, shall be brought within five years next after the cause of action shall have accrued.

defenses, including eleventh amendment immunity, good faith immunity, the statute of limitations, and failure to state a claim under Fed.R.Civ.P. 12(b)(6) because "no mutual understanding of tenure" ever existed.

■ The fourteenth amendment of the Constitution protects individuals not from private acts, but from governmental or state action, and reads "[n]o state shall ... deprive any person of life, liberty or property, without due process of law...." *Id.* A plaintiff proceeding under 42 U.S.C. § 1983[5] must show that the defendants violated a right "secured by the Constitution" of the United States, *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978), and additionally that the defendants acted as a "person who" violated rights "under color of any statute, ordinance, regulation, custom or usage of any State...." *See Flagg Bros., Inc., supra,* 436 U.S. at 156, 98 S.Ct. at 1733. The "color of state law" requirement of 42 U.S.C. § 1983 has been treated as identical to the "state action" element of the fourteenth amendment. *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 929, 102 S.Ct. 2744, 2749, 73 L.Ed.2d 482 (1982).

■ In order to reach the due process claim brought under § 1983, the Court must find that the defendants' acts constituted state action.[6] Under this requirement, however, the plaintiff is faced with a Hobson's choice. Should the Court determine from the facts that no state action is present, the due process claim must fail. If state action is found, we would under the circumstances of this case find EVMA immune from suit under the eleventh amendment, as delineated in *Jacobs v. College of William & Mary,* 495 F.Supp. 183 (E.D.Va.1980), *aff'd.* 661 F.2d 922 (4th Cir. 1981), *cert. denied* 454 U.S. 1033, 102 S.Ct. 572, 70 L.Ed.2d 477 (1981). This obtains because the Court has reviewed the defendants' immunity motion and the facts on this point, and in conclusion, would find EVMA immune from the instant claim on the same reasoning as the College of William & Mary decision. *Id.*

Moving past a finding on the immunity or state action issues, since it may not apply to all defendants, we find that the undisputed facts mandate that the due process claims fail on the merits to state a viable claim as to all the parties defendant.

The Supreme Court of the United States had occasion to consider the dismissal of a non-tenured state college faculty member in the case of *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Although it held that the teacher involved had not shown a deprivation of either liberty or property under the fourteenth amendment, the Court examined the application of both concepts in the academic setting. In the *Roth* case, the Supreme Court emphasized the lack of support in the record before it for the claim that Roth had been damaged in any way beyond simply not being rehired. With respect to Roth's property claim, the Court elaborated:

> Property interests ... are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure

---

5. 42 U.S.C. § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

6. The Supreme Court has in the past identified the following state action formulas: a "symbiot-

ic relationship"; *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); the "close nexus" test; *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); "public function" tests; *Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) and the "state compulsion" test, *e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Peterson v. City of Greenville,* 373 U.S. 244, 83 S.Ct. 1119, 10 L.Ed.2d 323 (1963).

certain benefits and that support claims of entitlement to those benefits.

408 U.S. at 577, 92 S.Ct. at 2709.

In *Roth,* the plaintiff was hired as an Assistant Professor for one academic year and was notified during that same period that he would not be rehired. The Supreme Court held that Roth had "no tenure rights to continued employment" as the school required four years permanent employment to achieve lifetime tenure. *Roth, supra,* 408 U.S. at 566, 92 S.Ct. at 2703.

*Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), decided the same day as *Roth,* involved academic tenure and a claim of due process. There, the Court quoted with approval from Corbin on Contracts to the effect that "[e]xplicit contractual provisions may be supplemented by other agreements implied from 'the promisor's words and conduct in the light of the surrounding circumstances,'" 408 U.S. at 602, 92 S.Ct. at 2700.

In *Perry,* the plaintiff had been employed for four years under a series of one year contracts. He eventually became an outspoken critic of the Odessa Junior College administration where he was a member of the faculty. He alleged his annual contract's nonrenewal was impermissibly based on the exercise of his somewhat vociferous first amendment rights. Further, he alleged that a "de facto tenure program" existed and was "fostered by the college administration." *Id.* at 408 U.S. 600–601, 92 S.Ct. at 2699. The Supreme Court remanded the case to the District Court on the first amendment issue and ordered a determination as to whether a de facto tenure program there had created a due process property interest under Texas law.

Moreover, in *Perry,* the "de facto tenure program" allegation was bolstered by the following faculty handbook provision which the Supreme Court termed "unusual":

"Teacher Tenure: Odessa College has no tenure system. The Administration of the College wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfac-.

tory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long as he is happy in his work."

*Id.* at 601, 92 S.Ct. at 2699. Clearly, such a broad provision might justify a legitimate expectation of continued employment. However, here the plaintiff has pointed to no such provision to support such a de facto tenure assertion, since no such language is found in the EVMS handbook.

█ Although *Perry's* teachings are thoroughly considered, this Court finds the facts of this case in line with *Roth* rather than *Perry.* No facts or allegations bring this case under the *Perry* genre. In the instant case, there has been no evidence whatsoever that any *de facto* tenure program existed. No conversations, implicit mutual understandings, or specific policies were alleged, nor have any been heretofore adduced by the Court, as between the plaintiff and the school administration. *Cf.* 408 U.S. at 602, 92 S.Ct. at 2700. The plaintiff explicitly and unequivocally denies any such conversations; alleging nothing at all was ever revealed to her regarding tenure until 1978. (Dep. of plaintiff at pp. 37, 46, 47, 49). The General rule of contract law in Virginia is that "there must be absolute mutuality of engagement, so that each party has the right to hold the other to a positive agreement. Both parties must be bound, or neither is bound." *Capps v. Capps,* 216 Va. 378, 219 S.E.2d 901, 903 (1975); *American Agricultural Chemical Co. v. Kennedy & Crawford,* 103 Va. 171, 176, 48 S.E. 868, 870 (1904). Counsel are unable to advise of any mutual contractual understandings, but instead the plaintiff asserts a unilateral belief and a claimed "non-disclosure".

Paragraph 31 of the complaint did assert a first amendment claim; however, the plaintiff's opposition brief on this point stated the allegation was a "typographical error" and should have read "fourth amendment." (Opposition to Defendant's alternative motion to dismiss at p. 6) Later, at oral argument on these various motions, the plaintiff's counsel indicated it may have

been a "typographical error", but then plaintiff's co-counsel urged that it was a "first amendment" claim. (Transcript of oral argument on motions, pp. 3–4) Besides this bald assertion in the complaint, there was no serious pursuit of this allegation at oral argument by the plaintiff. No facts have been identified that show her nonrenewal was based on the exercise of her first amendment rights or any other constitutionally impermissible reason, though she alleges her nonrenewal violated due process.

The plaintiff unilaterally believed that the AAUP lifetime tenure policy was in effect at EVMS until April 1978; however, as explained in *Roth:*

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Id.* 408 U.S. at 577, 92 S.Ct. at 2709. The Court finds no bilateral expectation of continued employment existed in this case under any contractual theory or under any tortious theory.

In reiteration, the Court cannot hold that AAUP lifetime tenure existed at EVMS when its faculty handbook expressly rejects such tenure and sets forth in explicit detail its tenure policy. The plaintiff was aware of this limited term policy at the latest in April 1978. There is neither a contractual nor a *de facto* program of lifetime tenure and no constitutionally impermissible basis of nonrenewal is proferred. Significantly, the case at bar does not involve any claim of racial, sexual or ethnic discrimination of any kind. At oral argument counsel did not dispute that the plaintiff was one of approximately eleven other EVMS faculty members whose contracts were not renewed in the 1982 recession.

### B.

As an additional grounds for dismissal, this Court holds that the due process claim under 42 U.S.C. § 1983 is barred by the statute of limitations.

In enacting the Civil Rights Act under which plaintiff Sabet sues, Congress passed no accompanying statute of limitations. Section 1988 of the Act, however, requires that federal courts borrow the appropriate limitations period from the state in which the claim arose. *See* 42 U.S.C. § 1988; *McCausland v. Mason County Board of Education,* 649 F.2d 278, 279 (4th Cir.) *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981). As Virginia presently has no limitation period expressly applicable to federal civil rights actions, the courts of this circuit have consistently applied Virginia's two-year statute for personal injury to civil rights actions. *Runyon v. McCrary,* 427 U.S. 160, 180–82, 96 S.Ct. 2586, 2599–2600, 49 L.Ed.2d 415 (1976), *affirming* 515 F.2d 1082 (4th Cir. 1975); *Allen v. Gifford,* 462 F.2d 615 (4th Cir.1972); *Almond v. Kent,* 459 F.2d 200, 203–04 (4th Cir.1972). The due process "property" claim here would create no exception to this general rule. *See* cases cited in *Runyon, supra,* 427 U.S. at 182, n. 17, 96 S.Ct. at 2600, n. 17. Hence, the two year limitation period laid out in Va.Code § 8.01–243(A) applies.[7]

█ It is well settled that when state law furnishes the period of limitations of an action arising under a federal statute that federal law controls its accrual or commencement. *See e.g., Newman v. Prior,* 518 F.2d 97, 100 (4th Cir.1975); *Vanderboom v. Sexton,* 422 F.2d 1233, 1240 (4th Cir.1970).

In the specific context of 42 U.S.C. § 1983 actions, the Fourth Circuit has held that the time of accrual of the action is when "plaintiff knows or has reason to know of the injury which is the basis of the action." *Cox v. Stanton,* 529 F.2d 47, 50 (4th Cir.1975); *Del Costello v. International Brotherhood of Teamsters,* 588 F.Supp. 902, 908 (D.Md.1984).

As discussed in Part I, *supra,* the plaintiff revealed in her deposition that she dis-

---

7. *See supra,* n. 4.
█

covered by April 1978 that EVMS did not accord lifetime tenure to its faculty. Clearly, the plaintiff in 1981 entered into a subsequent three-year contract which was a limited tenure contract. The defendants urge in their brief in support of their motion to dismiss at page 4 that any fourteenth amendment "property" claim was fully accrued and known in 1978 as follows:

> According to the plaintiff's testimony, she clearly learned as early as March or April of 1978 that the Eastern Virginia Medical School did not have "traditional tenure" as promulgated by the American Association of University Professors. Thus, at that time, she either knew or by the exercise of due diligence should have known that she would not be entitled nor would she receive "tenure" as she understood the term and as she has alleged in her Complaint. Certainly, she knew of the "facts forming the basis of her cause of action" much more than two years prior to the institution of this suit.

*Id.* The plaintiff, however, argues forcefully that her fourteenth amendment claim did not accrue until she received the notice of termination from EVMS on May 5, 1982, which would be within the two year limitation period.

Hired in 1977 for one year as an Assistant Professor, the plaintiff was later promoted to Associate Professor and she accepted a new contract for the period 1978 to 1981. She also was offered another three year associate faculty term at EVMS from 1981 to 1984.

The plaintiff discounts the importance of her 1978 discovery that EVMS had no AAUP lifetime tenure. Her opposition brief to the statute of limitations motion states at page 2:

> [T]he plaintiff had no cause of action until May 5, 1982 when she received her termination notice. Until that notification plaintiff may have had some vague concerns as to just what form of "limited tenure" (Sabet dep. p. 43, 1.2–5) applied to her, but she had not been damaged in any way as her contract had always been automatically renewed.

The plaintiff's argument warrants close scrutiny. The claims brought in Counts I and II assert that the denial of lifetime tenure violated the plaintiff's due process rights. She argues that since she entered into new contracts they were merely "automatically" renewed in 1978 and 1981, therefore, no injury occurred until 1982 when she received the nonrenewal notice.

■ The Court disagrees. Accrual of a cause occurs when the plaintiff "knows or has reason to know of the injury." *Cox, supra,* at 50. Under the plaintiff's own theory of the case, in 1978 she possessed all the requisite knowledge to support her due process claims. Her contracts were never "automatically" renewed, but rather were subject to termination at the end of either three year term. Any denial of tenure or lack of tenure-track employment was fully accrued and known in 1978 notwithstanding her new contracts. She was then subject to nonrenewal, and even immediate termination, albeit in breach of her contract. New contracts were in fact subsequently executed by her. However, the 1982 termination notice added no facts or knowledge which she did not already possess in 1978, i.e., that she was not hired on an AAUP tenure-track or lifetime tenure basis. Counts I and II do not assert that the plaintiff built up a right to tenure after 1978; rather they assert that she was initially hired on a tenure-track or within an AAUP tenure system. By 1978, her own deposition reveals that she understood the terms of her employment and her action was ripe. Moreover, the plaintiff's theory would totally ignore the doctrine of "merger" insofar as the latest contract is concerned. *See* 17 Am.Jur.2d *Contracts,* § 459 at page 924 and § 483 at page 952. The latest contract in 1981 admittedly contained the limited tenure provisions and must control.

Thus, her filing of this due process claim on April 30, 1984 some six years after the action accrued is time barred.

By virtue of her own deposition, the pleadings and the arguments, this action by

 

the plaintiff must be DISMISSED with prejudice.

IT IS SO ORDERED.