## Richmond

### W.C. ENGLISH, INC.

v.

### COMMONWEALTH OF VIRGINIA, DEPARTMENT OF TRANSPORTATION

No. 2005-91-2

Decided August 4, 1992

COUNSEL

John S. Barr; James C. Cosby (Maloney, Yeatts & Barr, P.C., on briefs), for appellant.

James D. Phillips, Assistant Attorney General (Mary Sue Terry, Attorney General; K. Marshall Cook, Deputy Attorney General; Richard L. Walton, Jr., Senior Assistant Attorney General, on briefs), for appellee.

OPINION

**BARROW, J.**—This appeal is from a judgment upholding the termination of a highway contract by the Virginia Department of Transportation. It questions whether the department can terminate a contract, based on unit pricing, when, without fault of either the contractor or the department, the amount of work and time required to complete the project greatly exceeds that for which the parties contracted. We hold that the department properly terminated the contract under a provision that allowed it to do so when a condition beyond its control prevented it from continuing with the contract.

The contract called for the grinding of highway pavement on Interstate 64 and Interstate 264 in Norfolk, Chesapeake and Virginia Beach. The contractor was to be paid for each unit of work completed, rather than a predetermined amount for the entire project.

Because performance of the contract took more time and work than was anticipated, the department terminated the contract. The contractor exceeded the contract's 180 calendar day time limitation by forty-three calendar days; therefore, the department also assessed liquidated damages against the contractor under a provision of the contract allowing liquidated damages for each calendar day beyond the 180 calendar day limitation. The department notified the contractor that it intended to terminate the contract at the end of the following month to allow the contractor time to conclude its operations; however, the contractor chose to terminate its efforts immediately.

The trial court, upholding the department's termination of the contract, declined to award the contractor damages. The trial court, however, did not address an additional assertion by the contractor that liquidated damages should not have been assessed.

## TERMINATION

The trial court found authority for the department to terminate the contract in a provision of the contract allowing termination by the department for conditions beyond its control "which would prevent the Department from continuing with the Con-

tract."[1] The parties do not contend that the language of this provision is ambiguous. We agree and, accordingly, must give to the language its plain meaning. *Marriott Corp. v. Combined Properties Ltd. Partnership*, 239 Va. 506, 512, 391 S.E.2d 313, 316 (1990). Consequently, we must affirm the trial court's decision if credible evidence supports a finding that a condition beyond the department's control prevented it from continuing with the contract.

The department's letter terminating the contract pointed out that "eighty-one percent of the dollar value of this contract has been expended with forty-seven percent of the grinding quantity yet to be completed." It expressed the department's intention to terminate the contract because of "cost overruns that would be associated with continuation of this project, the limited availability of additional funding for this contract, and an unfinished balance of forty-seven percent of the work." Finally, it observed that "[c]ompletion of the contract as originally designed would necessitate additional funding that is not presently available."

The contract called for a total payment of $1,438,063.17 for grinding 20.27 miles of concrete pavement within 180 calendar days. The total cost included grinding 358,619 square yards of concrete pavement at a unit price of $3.43 per square yard, 1,200 hours of maintenance of traffic control devices at $20 per hour, 1,200 hours of an electronic arrow at $70 per hour and an additional $100,000 for other work. During the course of the project, the contract price was increased to a total of $1,517,363.17 as the result of a work order. The department paid the contractor for the amount of work it performed at the unit price.

When the department terminated the contract, the contractor still had 154,000 square yards of grinding remaining to be completed. The department was approaching the point at which the

---

[1]  In part, the contract reads:

Sec. 108.14 Termination of Contract -

(a) By written notice, the Department, in its discretion, may terminate the Contract or any portion thereof due to any of the following conditions: . . .

4.  Conditions Beyond the Control of the Department — In the event conditions arise which would prevent the Contractor from proceeding with or completing the work contracted for, or any other conditions which would prevent the Department from continuing with the Contract.

funds allocated for this project would be exhausted and did not know when sufficient funds would be available to complete the project. It attempted to calculate "how long it would take to expend the additional amount of money in the contract" and to project termination of the contract "far enough in the future so that [the contractor] had an opportunity to clear up his loose ends, square up the job and get it in a condition where he could leave it."

The contractor does not assert that its failure to complete the project within the time and funds allocated was within the control of the department. Instead, it argues that the unavailability of funding is not a condition beyond the control of the department. In other words, it argues that even when it becomes apparent that the cost of completing the project will significantly exceed the total amount agreed upon in the contract, all available funding must be used and, when exhausted, other funding must be obtained to complete the project.

The contractor contends that the termination clause relied upon by the department is analogous to the common law doctrine of impossibility of performance. Moreover, it argues that because additional funding, in excess of that allocated for the project, could have been made available to continue the project, it was not impossible for the department to continue with the contract.

The termination clause in the contract differs from the doctrine of impossibility of performance. If not, it adds nothing to the contract and would be superfluous. *See Paddock v. Mason*, 187 Va. 809, 815, 48 S.E.2d 199, 202 (1948) (impossibility of performance implied in a contract). This contract provision uses the word "prevent" as opposed to "impossibility." A condition that merely "hinders" or "forestalls" continuation of the contract may "prevent" its continuation. *See The American Heritage Dictionary* 982 (2d College ed. 1976). Such a condition need not make it impossible to perform the contract.

Furthermore, the availability of unallocated additional funding did not change the fact that cost overruns by the contractor had effectively depleted the amount agreed to be paid for the entire project at a time when only half of it had been completed. The condition beyond the control of the department was not the availability of funding; the condition beyond the control of the depart-

ment was the contractor's overruns. Under these circumstances, to base the department's ability to terminate the contract on the availability of state funds would put the Commonwealth's treasury at the mercy of highway contractors' overruns, a consequence the termination provision was intended to avoid.

This termination provision is particularly appropriate in a contract such as this one. In a project involving renovation of an existing highway, unforeseen circumstances beyond the control of the contractor and the department can significantly alter the requirements necessary to complete the project. Unit pricing protects a contractor undertaking such a project from unanticipated cost overruns; the termination provision protects the department from unlimited liability for such cost overruns.

We conclude that credible evidence supported the trial court's finding that the contractor's overruns had exhausted funds available for completion of the contract and that the department was not required to use other funds for this purpose.

We hold, therefore, that the department properly terminated the agreement because of the existence of a condition beyond its control that prevented it from continuing with the contract.

## LIQUIDATED DAMAGES

The contractor also asserts that the trial court erred in failing to rule on whether the department was entitled to assess liquidated damages against the contractor. It argues on appeal that the "great weight of the evidence showed that [the department] waived the time specification of the contract." Evidence was presented that work was allowed to continue after the time required to complete it had passed. However, the trial court did not address the question of liquidated damages in its letter opinion or in the final order which incorporated that opinion by reference. The trial court erred in failing to address this issue; therefore, the judgment of the trial court is reversed and the proceeding remanded to permit the trial court to determine whether the evidence established that the department waived the requirement of liquidated damages.

*Reversed and remanded.*

Baker, J., and Elder, J., concurred.