985 F.2d 553
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ollye REYNOLDS, Plaintiff-Appellant,
v.
FAIRFAX COUNTY SCHOOL BOARD, Defendant-Appellee.
 No. 92-1066.
 United States Court of Appeals,
Fourth Circuit.
 Argued: December 3, 1992
Decided: January 27, 1993
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CA-91-890-A)
 Argued: Cheryl U. Lewis, Stites & Harbison, Lexington, Kentucky, for Appellant. Thomas John Cawley, Hunton & Williams, Fairfax, Virginia, for Appellee.
 On Brief: John A. Rosenthall, Alexandria, Virginia, for Appellant. Kimberly A. Newman, HUNTON & WILLIAMS, Fairfax, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before PHILLIPS, Circuit Judge, and SPROUSE and CHAPMAN, Senior Circuit Judges.
 PHILLIPS, Circuit Judge:
 
 
 1
 Ollye Reynolds appeals from the dismissal by summary judgment of her claims under state law and 42 U.S.C. § 1983 against the Fairfax County School Board (FCSB) alleging breach of contract and violations of her constitutional rights in declining to renew her contract as a school teacher. We find no error and affirm.
 
 
 2
 * Reynolds taught English at Herndon High School in Fairfax County, Virginia beginning part-time in September 1985 and fulltime in September 1986. FCSB renewed her one-year contracts again in 1987 and 1988. During the 1988-89 school year, Reynolds chose to participate in a voluntary merit pay program under which only teachers rated as "Skilled" or "Exemplary" were eligible for merit pay increases.
 
 
 3
 Reynolds received neither of these classifications at her mid-year review. She responded in part by conducting her first two classes of the next school day attired in a torn dress, bedroom slippers, large sunglasses, mismatched jewelry, and an abundance of lipstick. She told colleagues and students that she could not afford to dress appropriately, and later testified that her costume was intended to protest the merit pay program's inappropriate emphasis on surface appearances.
 
 
 4
 Principal William R. Caudill reacted by contacting the school system's crisis intervention team, with whom Reynolds spent the remainder of the day in Caudill's office. She was immediately placed on administrative leave with pay pending a psychiatric examination. A battery of personality and psychological tests showed no "justification for dismissal from her duties as a teacher based upon any mental or emotional problems." J.A. 66.
 
 
 5
 Before receiving that report, however, Caudill recommended to FCSB that Reynolds' contract not be renewed due to her unprofessional conduct. On March 10, 1989 Reynolds was told of that recommendation, and on April 7 she learned that FCSB had followed it. Although Reynolds never returned to the classroom, FCSB performed its obligation to pay Reynolds for the duration of her contract. In August 1990, she applied for re-employment with FCSB and was told that she had been non-renewed "for performance reasons ... and that employees who are non-renewed are not considered for reemployment in the Fairfax County Public Schools." J.A. 72.
 
 
 6
 Reynolds filed an action under 42 U.S.C. § 1983 and state law against FCSB in June 1991. She claimed that FCSB violated her First Amendment rights by not renewing her contract in retaliation for her exercise of those rights. She also claimed that FCSB breached an implied contract to return her to her duties from administrative leave once the psychological tests showed no mental or emotional instability. Finally, she claimed that FCSB's refusal to consider her application for re-employment in 1990 infringed her Fourteenth Amendment rights to due process and equal protection of the law.
 
 
 7
 The district court granted FCSB's summary judgment motion, finding that 1) Reynolds' first claim was time-barred, or, in the alternative, failed on the merits as a matter of law; 2) her second claim failed because she had no contractual right to return from administrative leave; and 3) her third claim failed because she had neither a constitutionally protected property right to re-employment upon which to predicate a due process claim, nor was her allegation of class-based discrimination sufficient to survive equal protection analysis. This appeal followed.
 
 II
 
 8
 Summary judgment orders are reviewed de novo, and affirmed only where, granting all reasonable inferences to the nonmoving party, there remains no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).
 
 
 9
 * A two-year statute of limitations applies to actions brought under 42 U.S.C. § 1983. Sabet v. Eastern Virginia Medical Authority, 611 F. Supp. 388, 397 (E.D. Va.), aff'd on other grounds, 775 F.2d 1266, 1270 (4th Cir. 1985). A cause of action for a § 1983 claim accrues when a plaintiff "knows or has reason to know of the injury which is the basis of the action." National Advertising Co. v. Raleigh, 947 F.2d 1158, 1162 (4th Cir. 1991) (citations omitted), cert. denied, 112 S.Ct. 1997 (1992). Reynolds had notice of FCSB's decision not to renew her contract in early April 1989. She filed suit in June 1991. Thus, the district court correctly held her first claim to be time-barred. We have considered Reynolds' arguments to the contrary, and we reject them. In view of this disposition, we need not reach the question whether Reynolds' claim would survive on the merits as a matter of law.
 
 B
 
 10
 Reynolds' pendent state law claim for breach of implied contract was properly dismissed. Neither FCSB's employment contract with Reynolds, nor the School Board Regulations incorporated therein by reference, impose any duty upon FCSB to return employees to work after administrative leave. To the contrary, the contract allows FCSB to dismiss employees for violating FCSB regulations, such as the prohibition against unprofessional conduct. J.A. 54-55, 199-201. Reynolds urges, however, that FCSB implied through its correspondence with her that she was to return to work provided that: (1) she comply with the directive to undergo psychological examinations; and (2) the examination results did not justify her dismissal. In light of the express terms of the written employment contract, however, the court correctly found as a matter of law that no such implied contract existed. Ellis & Myers Lumber Co. v. Hubbard, 123 Va. 481, 96 S.E. 754 (1918) (existence of explicit contract bars finding implied contract governing same terms). Moreover, Reynolds concedes that she was paid in full for the term of her contract; hence, even were her claim of breach substantiated, she suffered no legally cognizable harm. See Paddock v. Mason, 187 Va. 809, 818, 48 S.E.2d 199, 203 (1948).
 
 C
 
 11
 Reynolds' claim that FCSB's refusal to consider her application for re-employment in 1990 infringed her rights to procedural due process was also properly dismissed on the merits. To prevail on this claim Reynolds must demonstrate a property or liberty interest in governmental employment. Clark v. Whiting, 607 F.2d 634, 641 (4th Cir. 1979). No such interest exists in probationary employment, however, absent evidence that the challenged employment decision "is sufficiently stigmatic to constitute a deprivation of liberty," id., or evidence justifying a legitimate expectation of continued employment. Board of Regents v. Roth, 408 U.S. 564, 577 (1972); Perry v. Sindermann, 408 U.S. 593, 599-603 (1972).
 
 
 12
 Reynolds provided no such evidence before the district court. Although she alleged-without offering supporting evidence-damage to her reputation stemming from FCSB's alleged breach of contract in failing to return her to her duties from administrative leave, she offered neither similar arguments nor any underlying evidence with respect to FCSB's failure to consider her 1990 application for re-employment. And she directly undermined any possible finding that she legitimately expected continued employment with FCSB after the end of the 1988-89 school year by conceding before the district court that she was a probationary employee during that year. J.A. 32.
 
 
 13
 Nevertheless, Reynolds argues on appeal that she had a property interest in employment with FCSB grounded in a contractual right under Va. Code Ann. § 22.1-303, which confers tenure or "continuing contract status" upon teachers after three full years of probationary service. Va. Code Ann. § 22.1-303 (1985 & 1992 Cum. Supp.). She maintains that her first year of part-time service, combined with the two subsequent full-time contracts entered in 1986 and 1987, effectively conferred tenure upon her when FCSB renewed her contract in 1988. Consequently, she urges, FCSB was under an affirmative duty to accept her application for re-employment in 1990.
 
 
 14
 We consider issues raised for the first time on appeal only when the failure to treat the question below constitutes plain error and a fundamental miscarriage of justice. Stewart v. Hall, 770 F.2d 1267, 1271 (4th Cir. 1985). For several reasons, Reynolds' contention fails to meet that test. First, § 22.1-303 defines a teaching year for purposes of determining tenure eligibility as including at least 160 out of 193 possible teaching days. Reynolds offers no authority for the proposition that half-time employment satisfies this statutory requirement. Second, even if Reynolds had earned tenure as of the 1988-89 school year, FCSB would have retained the right to nonrenew her contract, as it did, for noncompliance with school regulations. Va. Code Ann. § 22.1-307 (1985). Third, Reynolds offers no authority for the proposition that FCSB retained a duty to renew a contract a full 18 months after deciding not to renew for cause. Finally, "any constitutionally protected property interest [Reynolds] had as a result of [her] employment contract has been satisfied by payment of the full compensation due under the contract." Royster v. Bd. of Trustees, 774 F.2d 618, 621 (4th Cir. 1985), cert. denied, 475 U.S. 1121 (1986).
 
 D
 
 15
 Finally, the district court also properly dismissed on the merits Reynolds' claim that FCSB's policy of refusing to consider applications for employment by former employees who have been nonrenewed creates an arbitrary classification and an irrebuttable presumption in violation of her right to equal protection of the law. Cleveland Bd. of Educ. v. La Fleur, 414 U.S. 632, 644 (1974).* She contends for strict scrutiny analysis of this claim, but that is necessary only if the challenged classification "impermissibly interferes with the exercise of a fundamental right or operates to the peculiar advantage of a suspect class." Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 312 (1976) (per curiam ).
 
 
 16
 Reynolds' claim satisfies neither of these criteria. She apparently did not contend before the district court that FCSB's nonconsideration of her 1990 application retaliated against her for activity protected under the First Amendment; instead, she attacked FCSB's alleged broader policy of refusing to consider applications for re-employment from teachers who had been nonrenewed-regardless of the stated cause for their nonrenewal. Read in context, however, FCSB's statement to Reynolds describes a nonconsideration policy that applies where nonrenewal was based on poor performance. J.A. 72. The district court correctly found as a matter of law that the class allegedly created by such a policy warrants no heightened scrutiny. See Daniels v. Quinn, 801 F.2d 687, 691 (4th Cir. 1986). Given FCSB's compelling interest in providing the children of Fairfax County with highquality teachers, even if FCSB's actions were to be viewed as creating a classification based on an irrebuttable presumption, the classification readily survives rational basis scrutiny. See, e.g., Murgia, 427 U.S. at 314-17. The decision of the district court is
 
 
 17
 AFFIRMED.
 
 
 
 *
 Although the La Fleur majority confined its discussion to due process analysis, Reynolds apparently invokes the decision in support of her equal protection argument. Cf. La Fleur, 414 U.S. at 652 (Powell, J., concurring). To the extent that she relies on La Fleur to support her due process argument, it is unavailing given her failure adequately to identify a liberty or 6350 35 7 property interest upon which to predicate that claim