TYGER CONSTRUCTION COMPANY, INCORPORATED AND PENSACOLA CONSTRUCTION COMPANY, JOINT VENTURERS DOING BUSINESS AS TYGER-PENSACOLA,

V.

COMMONWEALTH, DEP'T OF HIGHWAYS & TRANSP.

AND

COMPTROLLER

No. 0771-92-1

Decided September 28, 1993

COUNSEL

Guilford D. Ware (Martha M. Poindexter; Crenshaw, Ware & Martin, on brief), for appellants.

Todd E. LePage, Assistant Attorney General (Mary Sue Terry, Attorney General; K. Marshall Cook, Deputy Attorney General; Richard L. Walton, Jr., Senior Assistant Attorney General, on brief), for appellees.

OPINION

**BENTON, J.**—Tyger Construction Company, Incorporated, and Pensacola Construction Company, joint venturers doing business as Tyger-Pensacola (Tyger), appeal from the circuit judge's grant of partial summary judgment in favor of the Department of Highways and Transportation (VDOT). The circuit judge ruled that Tyger, a general contractor, who entered into a contract in 1985 with VDOT to construct portions of an interstate highway, could not assert a claim that its subcontractor incurred additional work not anticipated by Tyger in its contract with VDOT. Tyger contends that the circuit judge erred in finding that Tyger was not the proper party to assert the claim. We reverse the decision.

## I.

The pleadings established that after the making of the construction contract between Tyger and VDOT, Tyger, with the approval of VDOT, entered into a subcontract with the Norfolk Dredging Company to perform the dredging of areas designated as the North

Island and South Island. During the progress of construction, the subcontractor encountered subsurface conditions at the North Island site that the subcontractor deemed to be substantially different than those described in the contract documents provided by VDOT. The subcontractor sent Tyger a "notice of an impending claim," stating that the subcontractor had encountered material at the North Island "not contemplated by the contract plans and specifications." The subcontractor informed Tyger that those conditions were "reducing the operating time and capability of the equipment below that normally expected for the soil materials anticipated in this project." As a result of these conditions, the subcontractor was required to perform additional dredging work at North Island.

Tyger filed a claim with VDOT asserting the changed conditions and added expenses. VDOT denied the claim. Following the denial of the claim, Tyger timely filed a petition in the circuit court pursuant to Code § 33.1-386 seeking payment for the expenses of the additional dredging. Tyger contended that the additional work constituted "extra work" within the meaning of Section 104.03 of the VDOT Road and Bridge Specifications and that the specifications constituted a part of the contract between the subcontractor, Tyger, and VDOT. The trial judge ruled that *APAC-Virginia, Inc. v. Virginia Department of Highways & Transportation,* 9 Va. App. 450, 388 S.E.2d 841 (1990), was dispositive of the case and granted the Commonwealth's motion for partial summary judgment. The remaining claims in Tyger's petition were settled and dismissed in a final order.

Tyger asserts on this appeal, as it did in the circuit court, that this case is distinguishable from *APAC-Virginia* because Tyger alleged in its pleadings that it was injured by VDOT conduct and because Tyger seeks to recover on its own behalf damages it incurred as a result of VDOT's conduct. VDOT argues that "[t]he trial court [granted summary judgment] because Tyger was asserting [the subcontractor's] claim for damages . . . and because it believed the *APAC* case was dispositive of such a claim." The parties agree that this Court has jurisdiction over the appeal. *Commonwealth, Dep't of Highways & Transp. v. E.W. Yeatts, Inc.,* 233 Va. 17, 24, 353 S.E.2d 717, 721 (1987).

## II.

In *APAC-Virginia,* this Court addressed principles concerning privity of contract.

The common law requirement of privity of contract is well established. In Virginia, it is settled that no cause of action exists for a claim solely for economic loss, absent privity of contract. Only the common law privity rules involving personal injury or property damage have been modified by statute. Legislative abrogation of the privity of contract cannot be by implication and must be expressed.

An action on a contract must be brought in the name of the party in whom the legal interest is vested. Ordinarily, such an interest is vested only in the promisee or promisor, and only this person or his privy may sue on the contract.

9 Va. App. at 452, 388 S.E.2d at 842 (citations omitted). The facts in *APAC-Virginia* indicate that "[t]he general contractor petitioned the trial court for a judgment against the Department, asserting a claim, *not on its own behalf,* but on behalf of . . . one of its subcontractors." 9 Va. App. at 451, 388 S.E.2d at 842 (emphasis added). Indeed, that suit was styled *"APAC-Virginia, Inc., ex rel., etc." Id.* at 450, 388 S.E.2d at 841.

In this case, however, Tyger's petition in the circuit court was brought in Tyger's name as the aggrieved party, and the petition alleged injury and consequent damages suffered by Tyger. In pertinent part, Tyger's petition alleged as follows:

10. With the approval of VDOT, [Tyger] entered into a subcontract with [sub-contractor] to perform the dredging of areas designated as the sites for the North Island and South Island.

11. In the bid proposal, VDOT represented that the material to be removed by a hydraulic cutterhead dredge at the sites for the North and South Island consisted of muck and soft cohesive soil. . . . VDOT also provided [Tyger] and its subcontractor with boring logs which represented that the material to be removed by a hydraulic cutterhead dredge consisted of sand, silt, clay, and muck.

12. In removing the material to be dredged from the site for the South Island, the subcontractor . . . encountered the type of materials described in the contract documents; however, upon commencing dredging the site for the North Island, the subcontractor encountered differing subsurface conditions, including foreign materials, consisting of large timber piling, cables, rubber tires, other debris, and materials that differed substantially from that represented by the contract documents to be encountered in the

area and the type of materials that are not generally excavated by hydraulic cutterhead dredge.

13. At the time [VDOT] made its representations in the bid and contract documents as to the nature of the site conditions at the North and South Islands, it was aware that a ferry terminal had been operated by the Commonwealth of Virginia at the site of the North Island dredging project and that the remains of the ferry terminal included large timber pilings bound with cables and other such remnants located on the exact area required to be dredged under the contract.

14. Despite its obligation to do so, VDOT made no mention in its bid proposal or in the contract documents of the existence of the ferry terminal at the site of the North Island and failed to notify or warn [Tyger] or its subcontractor that remnants of the terminal remained beneath the surface on the site.

\* \* \* \*

16. As a result of encountering the unknown and differing subsurface conditions at the North Island, the cutterheads, dredge pumps, and pipes became clogged with debris, which required the operation to be shut down for extended periods, and when the equipment could be operated, it was at a slow pace because the dredge was hindered and delayed while the dredge cutterhead, with extreme difficulty, gradually ate its way through the massive timber pilings and debris situated in the site of the North Island.

17. The work required to be performed at the site of the North Island was of an entirely different nature than the dredging work described in the contract documents and contemplated by the parties at the time they entered into the contract. The additional work constituted "extra work" within the meaning of § 104.03 of the VDOT Road and Bridge Specifications, which constituted a part of the contract between the parties.

18. By reason of [VDOT's] misrepresentation of the subsurface conditions at the site and its negligent failure to reveal to [Tyger] the knowledge that VDOT had of the actual conditions at the site, [Tyger] . . . and their subcontractor have been damaged so far as it may now be determined to the extent of $464,558.41, computed in accordance with the contract specifications of VDOT, for which they are entitled to payment.

Although VDOT denied many of the allegations, Tyger's pleadings, when fairly read, assert an action that takes Tyger out of the ambit of *APAC-Virginia.* Tyger's pleadings satisfy the requirement of privity of contract because they facially state "[a]n action on a contract . . . brought in the name of the party in whom the legal interest is vested." *APAC,* 9 Va. App. at 452, 388 S.E.2d at 842.

VDOT argues that similarities exist between the underlying factual circumstances in this case and the factual circumstances alleged in *APAC-Virginia.* Indeed, this Court's opinion in *APAC-Virginia* states:

> The contract between the general contractor and the Department was for the construction of a highway project on Poplar Hill Road in Chesapeake, Virginia. The general contractor subcontracted to the subcontractor that part of the project involving the installation of utility and sewage pipes. The general contractor contends on behalf of the subcontractor that the project's plans, drawings and specifications prepared by the Department were "erroneous, defective and deficient" and resulted in delay of the subcontractor's work on the project and the expenditure of considerable sums not anticipated in the work of the project.

9 Va. App. at 451, 388 S.E.2d at 842. Significantly, however, in this case, Tyger has not brought this action in the circuit court on behalf of its subcontractor. When a cause of action arises for additional costs and expenses incurred in the performance of a contract, the general contractor is ordinarily the party who has contracted to perform the work and who has the right to sue for recovery under the contract. *See United States v. Blair,* 321 U.S. 730, 737-38 (1944). In its petition, Tyger asserted a claim on its own behalf and alleged that Tyger suffered damages. Indeed, among the other allegations, the petition stated that Tyger "entered into a contract with . . . VDOT" and that "[d]uring the progress of this construction, which was accepted as complete as of September 30, 1987, [the] claims arose pursuant to the contract documents." The petition facially satisfies the privity of contract doctrine.

### III.

The Supreme Court of Virginia has recently addressed the trial judge's duty in determining whether to grant summary judgment.

A trial court may enter summary judgment only if no material fact is genuinely in dispute. The summary judgment rules and the discovery rules, while not intended to substitute a new method for trial when an issue of fact exists, were adopted to permit trial courts to end litigation at an early stage provided it *clearly* appears that one of the parties is entitled to a judgment in the case as made out by the pleadings and the parties' admissions. But a trial court, in considering a motion for summary judgment, must adopt those inferences from the facts that are most favorable to the nonmoving party, unless such inferences are strained, forced, or contrary to reason. Conversely, the trial court is not permitted to adopt inferences from the facts that are most favorable to the moving party.

*Renner v. Stafford,* 245 Va. 351, 353, 429 S.E.2d 218, 220 (1993) (citations omitted).

We express no opinion whether Tyger has suffered damages or whether Tyger is entitled to recover under the contract. Thus, we do not decide whether VDOT was liable for the alleged difference between the actual subsurface conditions and representations that may have been made in the contract documents. We also do not decide whether the additional work required to complete the construction constituted "extra work" within section 104 of the VDOT Road and Bridge Specifications. We decide only that the trial judge erred in ruling that because of the holding in *APAC-Virginia* summary judgment was appropriate. Tyger filed suit in its own behalf and specifically alleged that it was damaged as a result of VDOT's conduct; thus, the holding in *APAC-Virginia* is not applicable to this case. Although VDOT denied in its pleadings that Tyger was damaged, the trial judge in ruling on the summary motion was "not permitted to adopt inferences from the facts that are most favorable to [VDOT,] the moving party." *Id.*

## IV.

Accordingly, we reverse the order granting partial summary judgment as to Count I of Tyger's petition and remand this case to the circuit court.

*Reversed and remanded.*

Baker, J., and Barrow, J., concurred.