COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Fulton and Callins
Argued at Richmond, Virginia

**PUBLISHED**

FREDERICKSBURG AMBULATORY
 SURGERY CENTER, LLC

v.      Record No. 1589-22-2

C. ROSSER MASSEY, III, M.D.

OPINION BY
JUDGE MARY GRACE O'BRIEN
JANUARY 30, 2024

FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Sarah L. Deneke, Judge[1]

John S. Buford (John B. Mumford, Jr.; Hancock, Daniel & Johnson,
P.C., on briefs), for appellant.

Jeannie P. Dahnk (Law Office of Jeannie P. Dahnk, on brief), for
appellee.

Fredericksburg Ambulatory Surgery Center, LLC (FASC) appeals the circuit court's

ruling granting Dr. C. Rosser Massey partial summary judgment. Massey was a shareholding

physician at FASC who sought redemption of his shares following his withdrawal from the

practice. FASC asserts that the court erred by determining which of two competing appraisals

controlled the value of Massey's shares on summary judgment. Because the question of which

appraisal controlled, if either, constitutes a genuine issue of material fact, we reverse.

                                    BACKGROUND

FASC is an outpatient surgery center in Fredericksburg, Virginia, and is comprised of

multiple members governed by a 2004 Operating Agreement. Massey was a physician member at

_____

[1] Although Judge Deneke entered final judgment, Retired Judge Joseph J. Ellis entered
the order granting partial summary judgment.

FASC and owned eight shares, or a 2% interest, in the practice. He withdrew from the practice on May 1, 2018, and only redeemed seven of his eight shares.

I. *The FASC Operating Agreement*

Under Article 9 of the Operating Agreement, physician members have the option to require FASC to purchase their shares upon their withdrawal from the practice. Section 9.6 governs the purchase price for a withdrawing physician member's interest: "the Redemption Price paid to the Withdrawn Member shall be equal to the Appraised Value . . . ." "Appraised Value" is defined in the agreement as "the dollar amount equal to the product obtained by multiplying (a) the percentage Membership Interest owned by a Member by (b) the Fair Market Value of the Company." Section 9.6(a).

Section 9.6(c) contains a formula for calculating the "Fair Market Value of the Company" using the "Last Appraisal Date." The "Last Appraisal Date" is "the effective date of the most recent appraisal prior to the Withdrawal Event of the value of the Company." Section 9.6(e). Similarly, section 9.6(d) provides that if no such appraisal exists, then FASC "shall obtain an appraisal of the Company and the Fair Market Value shall be the amount determined by such appraiser engaged by the Company."

II. *Massey's withdrawal and the subsequent dispute over the appraisals*

When Massey notified FASC that he intended to withdraw from the practice and redeem his shares, a disagreement arose over which of two appraisals established the redemption price. FASC asserted that an appraisal obtained in 2017 (the 2017 appraisal), which "provide[d] a third party, independent fair market value . . . analysis, *at the minority level*, of [FASC]," controlled. (Emphasis added). Massey asserted that a preliminary appraisal obtained in 2016 (the 2016 appraisal), which "provide[d] a third party, independent fair market value . . . analysis of the equity, *at the enterprise level*, of [FASC]," controlled. (Emphasis added). The 2016 appraisal, however, was obtained in

connection to a proposed merger with another surgery center and was never finalized. The 2016 appraisal is stamped "preliminary draft - subject to change." The 2017 appraisal resulted in a final valuation significantly lower than the 2016 appraisal.

### III. *Summary judgment*

Massey sued FASC, seeking a declaratory judgment that the 2016 appraisal established the value of the company for purposes of calculating the redemption price of his shares. Massey moved for partial summary judgment, asserting that the Operating Agreement unambiguously required an appraisal "of the company" and therefore the 2016 appraisal—an "enterprise level" appraisal—satisfied this requirement. He contended that the 2017 appraisal, by contrast, only established the fair market value of a minority shareholder's interest, not the company. Massey argued that the court "need[ed] to look no further than the documents and facts . . . before it to reach th[e] conclusion" that the 2016 appraisal was the only appraisal of the company.

FASC disputed Massey's contention that the 2017 appraisal did not actually value the company. FASC argued that the 2017 appraisal did, in fact, establish the fair market value of FASC as a company and that Massey merely challenged the methodology used in the 2017 appraisal— "specifically, [the appraiser's] valuation on a minority equity basis." FASC contended that because no particular appraisal methodology was contemplated in the agreement, Massey was bound by the 2017 results.

At the summary judgment hearing, Massey reiterated that the Operating Agreement was unambiguous that the appraisal controlling the redemption price must be an appraisal of the entire company and that the 2017 appraisal merely valued individual shares. Massey argued that "FASC is suggesting that *the how*[—]the valuation of . . . Massey's ownership interest[—]is the issue" but asserted that "how the value is determined is not before the Court. What is before the Court is *what* is to be valued. The what, pursuant to [the Operating A]greement, . . . is the company." (Emphases

added).  In response, FASC insisted that the 2017 appraisal in fact valued the company but simply used a different "minority level" methodology than the 2016 appraisal.  FASC also took issue with the preliminary nature of the 2016 appraisal, pointing out that it was "never finalized" and "obtained for a completely different purpose."  According to FASC, these disputes were genuine issues of material fact precluding summary judgment.

The court granted Massey partial summary judgment, finding that the 2016 appraisal was the only appraisal "of the company" and that the 2017 appraisal was "not applicable."  The court reasoned,

> I think any fair reading of th[e Operating A]greement . . . suggests that the valuation of the company is the valuation of the entire company.  I understand the argument that the document articulated as the minority equity may be considered by some to be a value of the company, but I don't think it is.  And as such, I think the 2017 document is irrelevant to the [c]ourt's consideration, and the only valuation before the [c]ourt that's appropriate for the [c]ourt to consider, based upon the precise wording of the agreement itself, is the 2016 valuation . . . .

After a bench trial, the court awarded damages based on the value of Massey's shares calculated using the 2016 appraisal.  FASC appeals.

ANALYSIS

Summary judgment may be granted in whole or in part "[i]f it appears from the pleadings, the orders, . . . the admissions, if any, in the proceedings, that the moving party is entitled to judgment."  Rule 3:20.  "Summary judgment may not be entered if any material fact is genuinely in dispute."  *Id.*  "The key phrase — 'entitled to judgment' — requires the moving party to demonstrate that no 'material' facts are 'genuinely in dispute.'"  *AlBritton v. Commonwealth*, 299 Va. 392, 403 (2021).  "A factual issue is genuinely in dispute when reasonable fact[]finders could 'draw different conclusions from the evidence,' not only from the facts asserted but also from the

- 4 -

reasonable inferences arising from those facts." *Id.* (quoting *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88 (2009)).

"The summary judgment rules . . . were adopted to permit trial courts to end litigation at an early stage provided it *clearly* appears that one of the parties is entitled to a judgment in the case as made out by the pleadings and the parties' admissions." *Tyger Constr. Co. v. Commonwealth*, 17 Va. App. 166, 172 (1993) (quoting *Renner v. Stafford*, 245 Va. 351, 353 (1993)). "When used incorrectly, however, summary judgment is a 'drastic remedy' that withdraws genuine issues of material fact from the fact[]finder." *AlBritton*, 299 Va. at 404 (quoting *Turner v. Lotts*, 244 Va. 554, 556 (1992)).

"[I]n an appeal of a decision awarding summary judgment, the trial court's determination that no genuinely disputed material facts exist and its application of law to the facts present issues of law subject to de novo review." *Mount Aldie, LLC v. Land Tr. of Va., Inc.*, 293 Va. 190, 196-97 (2017).

FASC argues that the court erred by granting Massey partial summary judgment because a genuine issue of material fact existed about which appraisal controlled the value of Massey's shares. FASC maintains that the 2017 appraisal is a valuation "of the company" and argues that Massey's contentions amount to a challenge to the methodology used by the appraiser. Moreover, FASC argues that it appropriately contested whether the 2016 appraisal was a valid appraisal because it was merely a draft copy and was never finalized. FASC asserts that it had sufficiently denied Massey's contentions to create a genuine issue of material fact. We agree.

First, as to FASC's pleadings and admissions, FASC consistently maintained throughout the litigation that the 2016 and 2017 appraisals both valued "the company" using different methodologies and that the 2016 appraisal also could not be relied upon because it was merely a preliminary draft. For example, in its answer to Massey's complaint, FASC denied Massey's

allegations that the 2016 appraisal "established the fair market value of FASC as a company" and that "an appraisal based on the value of a minority interest is not applicable." FASC also denied Massey's request for admissions on this point. In his first request for admissions, Massey requested FASC admit that "[it] received its last relevant fair market analysis of the company as of August 25, 2016." FASC denied the request and stated that while it had "received a preliminary draft analysis of the company as of August 25, 2016," it had "also received an analysis of the company as of April 30, 2017, which is the relevant fair market value analysis." In its supplemental responses to Massey's request for admissions, FASC again denied Massey's request to admit that "[t]he standard applied in the April 30, 2017 appraisal does not apply." FASC maintained this position at the summary judgment hearing, arguing that the 2017 appraisal "valued the company; [the appraiser] did it with a particular methodology. So it is still a value of the company. How you go about getting to that point is two different paths, no doubt, but it is still a value of the company." In light of FASC's responses, we cannot say it "*clearly* appears that [Massey wa]s entitled to a judgment in the case as made out by the pleadings and [FASC's] admissions." *Tyger Constr. Co.*, 17 Va. App. at 172 (quoting *Renner*, 245 Va. at 353).

Virginia law recognizes that when the pleadings and other materials properly considered under Rule 3:20 establish that material facts are genuinely in dispute, summary judgment is inappropriate. *Stone v. Alley*, 240 Va. 162, 163 (1990) (reversing summary judgment where a material factual question was "drawn in issue by the pleadings"); *see also McNew v. Dunn*, 233 Va. 11, 14 (1987) (finding that an answer denying that a duty to act existed created a genuine issue of material fact). FASC's pleadings and admissions fully denied Massey's factual allegation that the 2017 appraisal did not value the company.

Nor was FASC's position unreasonable on its face. The issue of whether the 2017 appraisal values the company was genuinely in dispute. "A factual issue is genuinely in dispute when

reasonable fact[]finders could 'draw different conclusions from the evidence,' not only from the facts asserted but also from the reasonable inferences arising from those facts." *AlBritton*, 299 Va. at 403 (quoting *Fultz*, 278 Va. at 88). Massey argues on appeal that the 2017 appraisal "is on its face a minority shareholder interest valuation," but that argument is belied by other statements in the 2017 appraisal purporting that it is a valuation of FASC. In the executive summary, the 2017 appraisal purports to "provide a third party, independent fair market value . . . analysis, at the minority level, of Fredericksburg Ambulatory Surgery Center, LLC." The concept of a "minority level" appraisal is not defined or explained in the document. Further, the document's conclusion notes that "[w]e have relied on the Income Approach *to value the Center.*" (Emphasis added). It is simply not clear from the document itself whether valuing FASC "at the minority level" is merely a methodological choice by the appraiser or whether is it, in fact, not a valuation "of the company." Indeed, the court acknowledged that a reasonable fact finder "could draw different conclusions" from the 2017 appraisal, *AlBritton*, 299 Va. at 403, and then drew its own factual conclusion: "I understand the argument that the document articulated as the minority equity may be considered by some to be a value of the company, but I don't think it is."

Massey relies on *Patel v. Siddhi Hospitality, LLC*, 495 P.3d 693 (Or. Ct. App. 2021), to support his argument that the 2017 appraisal is not applicable because it merely addresses the fair market value of minority shareholder interests. In *Patel*, an Oregon appellate court reversed a trial court's application of "minority and marketability discounts" to determine the value of a withdrawing LLC member's shares. *Id.* at 697-98. At trial, the court relied on the LLC's expert to find that the application of discounts was appropriate even though the operating agreement provided that the value of the shares would be a percentage of "all LLC assets." *Id.* at 695, 697. In reversing, the appellate court ruled that the plain language of the operating agreement "unambiguously required that [the withdrawing member] be compensated for his share in the fair market value *of all*

*the assets* of the LLC, *not* for the fair market value *of his share* of the company.  The distinction is subtle but significant." *Id.* at 697.  Massey argues that *Patel* correctly distinguished between "business enterprise value - the value of the business equity in total" and "the fair market value of [a] minority interest."

*Patel*, however, was not decided on summary judgment and had the benefit of evidence presented at a trial.  *Patel*, 495 P.3d at 695.  Here, it is not clear whether the 2017 appraisal only addressed the fair market value of minority shareholder interests or applied minority shareholder discounts.  The 2017 appraisal was unexplained and did not speak for itself, especially when Massey's assertions about what the appraisal valued were disputed by FASC.  In light of FASC's factual denials, summary judgment was not appropriate.

Further, FASC repeatedly denied that Massey's 2016 appraisal "counted as an appraisal at all."  FASC put the validity of the 2016 appraisal at issue both in its answer and at the summary judgment hearing, arguing that the preliminary appraisal was "obtained for a completely different purpose" and was "never finalized."  The validity of the 2016 appraisal was also a genuine issue of material fact that should not have been resolved on summary judgment.

CONCLUSION

Because at least two genuine issues of material fact existed—whether the 2017 appraisal valued the company and whether the 2016 preliminary draft appraisal "counted as an appraisal at

all"—the court erred in granting Massey partial summary judgment.[2]  Accordingly, we reverse the

court's judgment and remand this case for further proceedings.

*Reversed and remanded.*

---

[2] We need not reach FASC's remaining assignment of error challenging the court's refusal to consider an affidavit by its CFO offered in support of its opposition to summary judgment because we find the court erred by concluding that no genuine issue of material fact existed. *See, e.g.*, *Watson-Scott v. Commonwealth*, 298 Va. 251, 258 n.2 (2019) (recognizing that an appellate court must decide cases "on the best and narrowest grounds available" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).