COURT OF APPEALS OF VIRGINIA

Present:  Judges Causey, Friedman and Senior Judge Clements
Argued at Richmond, Virginia

**PUBLISHED**

CHARLES W. HURT AND SHIRLEY L. FISHER,
 AS TRUSTEES OF THE SOUTH PANTOPS II
 LAND TRUST U/A/D SEPTEMBER 16, 1981,
 AS AMENDED

                                                              OPINION BY
v.        Record No. 1198-23-2                    JUDGE FRANK K. FRIEDMAN
                                                              MARCH 4, 2025

DOUGLAS E. CATON


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

Joseph M. Rainsbury (Charles M. Sims; O'Hagan Meyer, PLLC, on
briefs), for appellant.

Andrew O. Mathews (Williams Mullen, on brief), for appellee.


This case involves an option contract to purchase a parcel of real property in Albemarle

County for future development of a "multifamily residential community."  Douglas Caton and the

South Pantops II Land Trust (the Trust) entered into an "Option to Ground Lease" (the Agreement),

where Caton had an "exclusive and irrevocable option" to rent, and then purchase, the Trust's

13.12-acre parcel of real property.  During the option period, an adjacent third-party landowner

claimed that it had adversely possessed a small portion of the Trust's property.  Caton ultimately

declined to exercise the option, purported to terminate the Agreement, and demanded damages.

When the Trust refused to pay the damages sought by Caton, the would-be buyer filed suit

for breach of contract in the Circuit Court of Albemarle County.  The parties filed cross-motions for

summary judgment.  Caton argued that he was not required to exercise the option to be entitled to

damages; in the alternative, he argued that his failure to exercise the option was excused since

exercising the option was futile given the adverse possession litigation. The Trust responded that Caton never exercised the option, and thus, the contract provision requiring the Trust to provide the land was never triggered—and, therefore, never breached. This would mean that Caton could walk away from the deal but was not entitled to damages. Further, the Trust argued that exercise of the option was not futile, as a matter of law. The Trust noted that the Agreement was specifically structured to give the Trust thirty days after the option was exercised to cure any perceived problems—and the Trust could have settled the adverse possession litigation within thirty days as permitted by the Agreement if Caton had actually exercised the option.

The circuit court held that Caton was required to exercise the option based on the Agreement's plain language—but then ruled that Caton's failure to exercise the option was excused because exercising the option would have been "futile" and "useless" under the circumstances. The court then entered summary judgment for Caton and awarded him damages in the amount of $442,885.50 plus $96,329.00 in attorneys' fees.

The question raised in this appeal is whether Caton could reject the deal and still collect related damages for the Trust's alleged failure to perform—without ever exercising the option which triggered the Trust's obligation to provide the property free of defects.

BACKGROUND

The Trust owns a piece of real property in Albemarle County that is approximately 13.12 acres. Charles Hurt and Shirley Fisher are the trustees of the Trust. Caton was interested in the land and had an eye toward developing it. The parties entered into the Agreement, giving Caton an "exclusive and irrevocable option" to rent, and ultimately purchase, the property if the option was exercised.

*The Agreement*

On August 7, 2017, Caton and the Trust, through its trustees Hurt and Fisher, entered the Agreement, giving Caton the option to rent, and then purchase, the Trust's 13.12-acre parcel of real property. Caton paid the Trust $10,000 per month for this option, and the Trust was precluded from selling to anyone else.

The Agreement provided that if Caton exercised the option and the Ground Lease went into effect, then Caton was required to purchase the property thereafter. Section 1(b) of the Agreement provided, in relevant part, that:

> The commencement date of the Ground Lease (the "Ground Lease Commencement Date") shall be the date which is thirty (30) days after the date Lessee [Caton] exercises the Option in accordance with Section 2(a), unless an earlier date is agreed upon by the parties. It shall be a condition precedent to the Ground Lease Commencement Date that as of such date (a) the Property shall be free and clear of all liens and other encumbrances except for . . . (iv) other easements and restrictions of record as would not materially and adversely affect the development of the Property for multi-family residential use[.]

Thus, the Trust had thirty days—upon Caton exercising the option—to satisfy its "condition precedent to the Ground Lease Commencement Date." Section 2(a) of the Agreement stated that Caton had five months "to exercise the Option by written notice to Lessor [the Trust]." It continued that Caton could "extend" the option period for six months "by providing written notice to" the Trust no later than the last day of the option period. Section 2(b) of the Agreement provided that, "Lessee [Caton] may terminate this Agreement and the Option upon at least thirty (30) days prior written notice to Lessor [the Trust] specifying the effective date of termination."

Section 9 of the Agreement, entitled "Liquidated Damages" states, in pertinent part, as follows:

> In the event that (a) the Option cannot be consummated because of a failure of one or more conditions set forth in Section 1, or (b) Lessor [the Trust] materially breaches its obligations under this Agreement, Lessee [Caton] may terminate this Agreement by written notice to

Lessor [the Trust], and Lessee [Caton] shall be entitled to immediately receive a refund of the Option Consideration, plus all out-of-pocket expenses incurred by Lessee [Caton] in connection with Lessee's [Caton's] diligence pursuant to Section 2(b), as liquidated damages, and neither party shall have any further obligation hereunder, except for such obligations as expressly survive the termination hereof.

Under § 2(b) Caton could terminate the Agreement and walk away; under § 9 Caton could terminate the Agreement and collect damages if the Trust breached the Agreement or failed to meet the option conditions in § 1. Here, Caton purported to terminate the Agreement under § 9(a)—but did not exercise the option.[1]

*Caton's Development Plans and the Adverse Possession Litigation*

The Agreement stated that Caton "intends to evaluate the development potential of the Property" and "[d]uring the term of the Ground Lease, [Caton] intends to develop and construct on the Property a multifamily residential community." In 2018, during the option period, Caton, through Management Services Company, hired Jim Taggart to prepare a site plan for a multifamily housing development and to develop construction drawings.

Abutting the Trust's property is a residential community ("Overlook"). In August 2019, while the option remained open, the Overlook Homeowners Association of Pantops filed a lawsuit against the Trust, asserting ownership via adverse possession of a small portion of the Trust's property that Overlook allegedly had used as a walkway for several years.[2] The disputed land impacted Taggart's proposal since it was near a proposed building. Later in 2019, Caton asked Taggart to develop additional proposals, in light of the adverse possession litigation. Taggart developed seven alternative plans.

---

[1] Section 11(c) provides that the "prevailing party shall be entitled to reasonable attorneys' fees and court costs through all trial and appellate levels."

[2] The Trust and Caton disagreed over the amount of land in dispute. The record reveals that the disputed land measured between 0.03 acre and 0.215 acre.

The adverse possession litigation ultimately was resolved in 2022—after Caton had already rejected the Agreement in March of 2021.[3]

*The Fifth Amendment to the Agreement Acknowledges the Adverse Possession Dispute and Reduces the Option Consideration*

The option period was originally for a period of five months, and at a cost of $10,000 per month paid by Caton to the Trust. The option was extended through March 31, 2021, via seven amendments. The original four amendments merely extended the option period without any meaningful changes. By the time of the fifth amendment, however, Overlook had initiated the adverse possession litigation against the Trust.

The recital to the fifth amendment explained that "an adverse possession dispute" was ongoing between the Trust and the Overlook Homeowners Association; as a result, if Caton "were to exercise the Option, the conditions precedent to the commencement date of the Ground Lease set out in § 1(b) of the Agreement would not be satisfied." The recital also noted that the adverse possession litigation "may not be resolved prior to the end of the Option Period" that was set to expire on January 31, 2020. Caton and the Trust agreed to "extend the Option Period" and "adjust the Option Consideration" in light of the adverse possession litigation. The fifth amendment provided the following term, as relevant to this appeal:

> Option Consideration. Commencing with the monthly installment due February 1, 2020, the Option Consideration is hereby reduced from Ten Thousand Dollars ($10,000.00) per month to One Thousand Dollars ($1,000.00) per month. Notwithstanding the foregoing, in the event that the Overlook Matter is resolved to the reasonable satisfaction of Lessee [Caton] (whether by settlement, issuance of a judgment, or otherwise), the Option Consideration shall revert to Ten Thousand Dollars ($10,000.00) per month beginning as of the month next following such resolution.

---

[3] Under the settlement terms of the adverse possession dispute, the Trust and Overlook agreed to do a "land swap." This agreement was formalized in a settlement agreement dated September 14, 2022, and the adverse possession suit was dismissed.

Thus, the fifth amendment—entered in January of 2020—acknowledged the adverse possession dispute, reduced the cost of the option until the matter was resolved, left the option provisions in place—and the agreement continued thereafter with Caton making payments. Subsequently, a sixth and seventh amendment were negotiated to extend the expiration date. Via the seventh amendment—executed on February 26, 2021—the parties extended the option period through March 31, 2021.

*Caton Seeks to Terminate the Deal and Recover Damages, Without Giving the Trust the Opportunity to Perform*

On March 29, 2021, two days before the option period was set to expire, Caton, through his attorney, sent a letter to the Trust with the subject line, "Termination of Option to Ground Lease." Caton suggested that he was terminating the Agreement pursuant to § 9(a). Caton argued that due to the adverse possession litigation "the conditions precedent set out in Section 1(b) . . . cannot be satisfied, and the Option cannot be consummated." Caton demanded "an immediate payment in the amount of $442,885.50 which constitutes a refund of $314,000.00 in Option Consideration, plus $128,885.50 in out-of-pocket expenses . . . ."

On August 12, 2021, Caton, through his attorney, sent a subsequent letter to the Trust with the subject line, "Termination of Payment Demand." The letter explained that "Lessee [Caton] terminated the Agreement based on [the Trust's] inability to satisfy the conditions precedent set out in Section 1(b) of the Agreement." Caton argued that he was thus entitled to damages under § 9 of the Agreement. Caton warned that if his payment demand was not fulfilled by September 1, 2021, then he would file suit for breach of contract. The Trust refused to pay.

*The Circuit Court Rules on the Party's Cross-Motions for Summary Judgment*

Caton filed suit in the Circuit Court of Albemarle County, alleging one count of breach of contract. Caton took the position that he was entitled to damages from the Trust for breach of contract because "the conditions precedent set out in Section 1(b) of the Agreement could not be

satisfied, and the Option could not be consummated" as a result "of the adverse possession claim in the pending Overlook Litigation[.]" Caton explained that, on March 29, 2021, he "terminated the Option Agreement pursuant to Section 9 of the Option Agreement (the 'Termination Letter')."

Each party moved for summary judgment. In opposing Caton's motion for summary judgment and in support of its own motion for summary judgment, the Trust argued that "as a matter of law, [Caton's] Termination Notice effected a rejection of the Option . . . thereby negating [the Trust's] duty or obligation to satisfy the conditions of Section 1(b) before the Ground Lease Commencement Date."

The circuit court ultimately granted judgment for Caton. The court explained its decision in an oral ruling from the bench. The circuit court first found that Caton was "legally obligated . . . to exercise the option agreement" in order for the damages language in § 9 to apply. Caton did not exercise the option.

The circuit court next found, however, that Caton's failure to exercise the option "was excused due to futility." The circuit court relied on *Waller v. Welch*, 154 Va. 652 (1930), for the proposition that the futility exception excused Caton's failure to exercise the option. The circuit court "f[ou]nd in March of 2021, that performance of the option agreement would have been a useless act." The circuit court bolstered this conclusion by reasoning that "[i]n May of 2022, the parties [were] still negotiating, and the most . . . recent settlement . . . proposal [was] rejected." The court also found that the adverse possession litigation was "material and adverse to the impact of the development of the property." The court noted that "[w]hile I agree with the Defense [that] it does not specifically state in the agreement that the plans or the development of the multi-family residences had to be pursuant to [Caton's] plans, I think that is a reasonable inference . . . ." The court concluded that it "finds that the futility excused the obligation to exercise the option and

- 7 -

grants summary judgment for the Plaintiff [Caton] in the amounts testified to by Ms. [Diane] Caton. In looking at her testimony, I found it to be credible."[4]

The circuit court, after making inferences and credibility determinations to benefit Caton, granted Caton summary judgment. The court awarded Caton damages in the amount of $442,885.50 and attorneys' fees in the amount of $96,329.00.

The Trust and Caton appeal the circuit court's judgment.[5]

STANDARD OF REVIEW

"The interpretation of a contract is a question of law that this court reviews de novo." *Bolton v. McKinney*, 299 Va. 550, 554 (2021).

"Summary judgment is appropriate in cases where no 'material fact is genuinely in dispute' and the moving party is entitled to judgment as a matter of law." *Ranger v. Hyundai Motor Am.*, 302 Va. 163, 169 (2023) (quoting Rule 3:20). "In an appeal from a circuit court's decision to grant or deny summary judgment, we review the application of the law to undisputed facts de novo." *Id.* "A factual issue is genuinely in dispute when reasonable factfinders could 'draw different conclusions from the evidence,' not only from the facts asserted but also from the reasonable inferences arising from those facts." *AlBritton v. Commonwealth*, 299 Va. 392, 403 (2021) (quoting *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88 (2009)).

> [A] trial court, in considering a motion for summary judgment, must adopt those inferences from the facts that are most favorable to the nonmoving party, unless such inferences are strained, forced, or contrary to reason.

---

[4] Her deposition testimony was admitted and considered by the circuit court as it related to the issue of damages. There is no challenge regarding the circuit court's consideration of depositions at the summary judgment stage. *See Lloyd v. Kime*, 275 Va. 98, 106 (2008) (holding that pursuant to Rule 3:20 and Code § 8.01-420 "the parties must agree to the use of depositions before they may serve as a basis in whole, or in part, for the entry of summary judgment[,]" and that "[t]his condition requires some showing of acquiescence in the use of a deposition").

[5] Caton has assigned cross-error to the circuit court's ruling that he was obligated to exercise the option for the damages language in § 9 of the Agreement to apply.

> Conversely, the trial court is not permitted to adopt inferences from the facts that are most favorable to the moving party.

*Tyger Constr. Co. v. Dep't of Highways & Transp.*, 17 Va. App. 166, 172 (1993) (quoting *Renner v. Stafford*, 245 Va. 351, 353 (1993)).

## ANALYSIS

I. The circuit court correctly determined that the Agreement required Caton to exercise the option to trigger performance obligations by the Trust.

Caton alleged that the Trust breached the Agreement. The Trust responded that it did not breach the Agreement—and if Caton actually had exercised the option, triggering the thirty-day period to cure any defects, the Trust could have met the requirements. The Trust reasons that since the option was never exercised, the obligation to provide the land free of liens and encumbrances never arose—so no damages could be available for a breach.

"The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Ramos v. Wells Fargo Bank, NA*, 289 Va. 321, 323 (2015) (quoting *Filak v. George*, 267 Va. 612, 619 (2004)).

When interpreting a contract, "[t]he fundamental question . . . is 'what did the parties agree to as evidenced by their contract,' and the 'guiding light' for such construction is 'the intention of the parties as expressed by them in the words they have used.'" *RECP IV WG Land Investors L.L.C. v. Capital One Bank USA, N.A.*, 295 Va. 268, 283 (2018) (quoting *Schuiling v. Harris*, 286 Va. 187, 192 (2013)). "When the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. Words that the parties used are normally given their usual, ordinary, and popular meaning." *Id.* (quoting *City of Chesapeake v. Dominion SecurityPlus Self Storage, L.L.C.*, 291 Va. 327, 335 (2016)).

"A court may not 'add to the terms of the contracts of parties by construction, in order to meet the [circumstances] of a particular case.'" *Bentley Funding Group, L.L.C. v. SK&R Group, L.L.C.*, 296 Va. 315, 323 (2005) (alteration in original) (quoting *C.S. Luck & Sons, Inc. v. Boatwright*, 157 Va. 490, 497 (1932)).

A. Which takes precedence: the exercise of the option or the appearance of an impediment to performance?

The circuit court found that, under the Agreement, Caton was obligated to exercise the option for the damages provisions of § 9(a) to apply. Caton argues that "nothing in the Agreement require[d] Mr. Caton to exercise the Option where a condition set forth in Section 1(b) cannot be met."[6] Caton suggests that the question really is whether "[a]t the time of termination, could [the Trust] have consummated or completed the Option?" Caton contends that because the answer to that question is "no," he was free to terminate the Agreement and still be entitled to damages pursuant to § 9(a). The problem with this position is that the Ground Lease Commencement Date, under the contract, is defined as *thirty days after* the "Lessee exercises the option." By requiring the Trust to meet requirements thirty days after the option is exercised, the deal plainly gave the Trust a timeframe to cure any perceived defects—such as the adverse possession problem involving the small strip of land. Moreover, § 9(a) provides a damages remedy if "[t]he Option cannot be consummated." As the circuit court observed, consummation would only arise if the option had been invoked.

The Trust argues that because Caton never exercised the option, the Trust's obligations to deliver the land free of encumbrances under § 1(b) never ripened. Put another way, the Trust contends that by not exercising the option, Caton's maneuvers sought to block the Trust from

---

[6] Caton contends in his assignment of cross-error that while the circuit court correctly found that exercising the option was, as a matter of law, futile, "the [t]rial [c]ourt erred in finding that Mr. Caton was legally obligated, whether contractually or at law, to exercise the Option prior to terminating the Option Agreement pursuant to Section 9(a)."

- 10 -

having the opportunity to meet its obligations under the Agreement.  In any event, the Trust contends that where Caton never exercised the option, he cannot claim damages for breach of the contract when the condition precedent for triggering performance never occurred.[7]

### B.  Features of option contracts

"An option contract is a continuing offer to sell, which may become a contract of sale once the option holder gives notification of a desire to exercise the option."  *Wilburn v. Mangano*, 299 Va. 348, 353 (2020).  "An 'option' is merely a 'continuing offer to sell, irrevocable during the option period.'"  *Hart v. Hart*, 35 Va. App. 221, 235 (2001) (quoting J.R. Kemper, *Necessity for Payment or Tender of Purchase Money Within Option Period in Order to Exercise Option in Absence of Specific Time Requirement for Payment*, 71 A.L.R.3d 1201 § 2 (1976 & Supp. 2000)).  In discussing option contracts, our Supreme Court has explained that: "Contracts of this kind are, in reality, condition-agreements.  Upon the happening of the condition—that is, upon making the request, giving the assent, or declaring the option—they become absolute, and in many instances mutual in their obligation."  *Carter v. Hook*, 116 Va. 812, 817 (1914).  "Once the optionee 'exercises' the option, or accepts the offer, the option is converted into a bilateral contract of purchase and sale."  *Hart*, 35 Va. App. at 236.  As our Supreme Court has explained:

> Under traditional principles of contract law,
>
> (1) Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused.
> (2) Unless it has been excused, the non-occurrence of a condition discharges the duty when the condition can no longer occur.
> (3) Non-occurrence of a condition is not a breach by a party unless he is under a duty that the condition occur.

[7] This theory assumes it would not be futile to exercise the option on the basis that the Agreement could not be performed.  *See, e.g.*, *Waller*, 154 Va. at 662 (buyer need not go through the motions of performance where the contract has been rendered incapable of being carried out).

*Rastek Constr. & Dev. Corp. v. Gen. Land Commer. Co.*, 294 Va. 416, 425-26 (2017) (citing *Restatement (Second) of Contracts* § 225 (1981)).[8]

"A mere condition precedent is not the same thing as an affirmative contractual promise or duty. A 'condition' is '[a] future and uncertain event on which the existence or extent of an obligation or liability depends' or 'an uncertain act or event triggers or negates a duty to render a promised performance.'" *Id.* at 429 (quoting *Black's Law Dictionary* 354 (10th ed. 2014)). "A promisor may be liable, with or without fault, for a breach of a contractual duty. A mere condition, however, has a presumptively opposite effect. Its nonoccurrence, standing alone, typically excuses the promisor of any liability." *Id.*

### C. Caton's assignment of cross-error fails; the Agreement, by its terms, did not permit Caton to recover damages without first exercising the option.

We agree with the circuit court that, based on the Agreement's plain language, in order for Caton to be entitled to relief under §§ 9 and 1(b), Caton was required to exercise the option. Because Caton never exercised the option, the obligations owed by the Trust to Caton under § 1(b) never became due.[9] These obligations included the duty to provide the land free of material encumbrances. Here, Caton's exercise of the option was a condition precedent to the obligations in

---

[8] Generally, "a term that makes an event a condition of one party's duty does not of *itself* impose a duty on the other party that the event occur, and the nonoccurrence of a condition is therefore not of itself a breach of contract by that other party." *Rastek Const. & Dev. Corp.*, 294 Va. at 426 (quoting 2 E. Allan Farnsworth, *Farnsworth on Contracts* § 8.3, at 421-23 (3d ed. 2004)). "A condition precedent calls for the performance of some act, or the happening of some event after the terms of the contract have been agreed upon, before the contract shall take effect." *Smith v. McGregor*, 237 Va. 66, 75 (1989) (quoting *Morotock Ins. Co. v. Fostoria Novelty Co.*, 94 Va. 361, 365 (1897)). "In other words, 'the contract is made in form, but does not become operative as a contract until some future specified act is performed, or some subsequent event occurs.'" *Id.* (quoting *Morotock*, 94 Va. at 365).

[9] *See BNY, Capital Funding L.L.C. v. US Airways, Inc.*, 345 B.R. 549, 553 (E.D. Va. 2006) ("Unperformed obligations become due if, and only if, the optionee exercises the option . . . . If the option is not exercised, the unperformed obligations never become due and neither party commits a breach." (alteration in original) (quoting *Bronner v. Chenoweth-Massie P'ship (In re Nat'l Fin. Realty Trust)*, 226 B.R. 586, 589 (Bankr. W.D. Ky. 1998))).

§ 1(b) being due by the Trust. The Agreement expressly provided that, upon Caton exercising the option, the Trust would have thirty days to ensure its obligations were satisfied.

Caton argues that the Trust failed to comply with a "condition precedent" that was due under § 1(b) regardless of whether the option was exercised: that "the Property [was] free and clear of all liens and other encumbrances except for . . . (iv) other easements and restrictions of record as would not materially and adversely affect the development . . . ." We disagree with Caton that the condition in § 1(b) was due regardless of whether the option was exercised. By the Agreement's express language, Caton needed to exercise the option for the Trust's obligations in § 1(b) to ripen.[10] Moreover, by refusing to invoke the option, Caton preemptively denied the Trust the opportunity to satisfy its obligations under the Agreement.

We do not disagree with Caton that the Trust *may* not have been able to resolve the adverse possession litigation within thirty days if Caton had exercised the option. However, the Agreement expressly contemplated a scenario where the Trust might not be able to fulfill its obligations *initially* due to, for instance, an intervening event like a claimed encumbrance on the property. And the Agreement provided, in that scenario, thirty days for the Trust to cure any defects, and if the Trust failed to fix the issues, then Caton would be able to terminate the Agreement, pursuant to § 9, and seek monetary damages.

We conclude that the circuit court correctly determined that, based on the terms of the Agreement, Caton was required to exercise the option for the conditions set forth in § 1(b) to be owed by the Trust. Thus, we affirm the circuit court's ruling on this point, and we reject Caton's assignment of cross-error that the Agreement itself permitted him to invoke remedies under § 9

---

[10] This is a distinct question from whether the Trust repudiated the Agreement or so violated its requirements that exercising the option would be futile. If exercising the option would be futile, then Caton's non-compliance could be excused. This question will be addressed below.

- 13 -

without exercising the option. The remaining question is whether the circumstances were so far gone with respect to the adverse possession claim and the option that Caton could unilaterally declare the Agreement violated and demand damages without giving the Trust the opportunity to cure; thus, we turn to the question of whether Caton's failure to exercise the option can be excused based on futility.[11]

> II. The circuit court erred when it concluded that Caton's failure to exercise the option, as required by the Agreement, was excused, as a matter of law, because of the futility exception articulated in *Waller v. Welch*, 154 Va. 652 (1930).

Despite the circuit court's finding that Caton was required to exercise the option under the Agreement before seeking damages, the court went on to find that Caton's failure to invoke the option was excused because compliance with the Agreement was futile and useless under the circumstances. In ruling that, as a matter of law, the futility exception excused Caton's failure to comply with the Agreement, the circuit court relied upon *Waller*, 154 Va. at 662.

In *Waller*, plaintiff signed an option contract with defendants, whereby plaintiff had an exclusive right to purchase a tract of real property for a given period of time. During the option period, defendants sold the land to a third party in violation of the contract. Plaintiff filed suit, and the circuit court dismissed the case on a demurrer. Our Supreme Court reversed, holding that the sale of the property to another foreclosed the seller's ability to sell to the would-be buyer. The Supreme Court observed that:

> [W]here a defendant has repudiated the contract an allegation of performance by plaintiff is unnecessary. * * * Where it is alleged that nonperformance of a condition precedent was caused by the act of the defendant, plaintiff is not bound to aver performance or readiness to perform on his part; he may simply allege the facts constituting his excuse.

---

[11] While the question of "breach" here is something of a "chicken and egg" problem, the consequences are significant. If exercising the option was truly a futile act, then Caton's failure to follow its terms would be excused.

*Waller*, 154 Va. at 662.  In *Waller* the sale of the subject land to another amounted to repudiation of the deal—the seller certainly could not perform the sale after selling the land to another buyer. Thus, performance of any condition precedent by the buyer would be a useless act.

Here, the circuit court relied upon language in *Waller* in determining that Caton's failure to comply with the Agreement was excused as a matter of law.  The circuit court embraced the "useless act" language employed in *Waller*—which was made in a repudiation context:

> He shows no right of action unless he shows that he has performed the condition precedent, or that he was prevented from so doing by the act of the defendant, or unless it appears that the performance of the condition would be a useless act, as when defendant has repudiated the contract or has refused to perform.

*Id.* (quoting Corpus Juris, Vol. 13, 725-27).

We are unpersuaded that *Waller* controls the outcome here given the significant differences between that case and this one.  To begin, in *Waller*, decided at the demurrer stage, the defendants sold the land to a third party, and thus, our Supreme Court concluded that, "[t]o have made tender of the purchase price would have been in vain in the face of the fact that the land had been sold by the defendants in violation of their duty under the alleged agreement . . . ." *Id.*  Unlike in *Waller*, the Trust, here, continued to own the property throughout the option period and did not sell it to a third party—a significant distinction.  And while there was a dispute with a third party involving a sliver of land, Caton and the Trust took that into account, in the fifth amendment to the Agreement, when reducing the consideration owed to keep the option open.[12]

Further, unlike in *Waller*, the Trust never repudiated the Agreement or refused to perform. After all, the Agreement itself contemplated potential encumbrances that may (or may not) impact consummation of the Agreement if the option was exercised, and it was structured such that the

---

[12] Pursuant to the fifth amendment, Caton's monthly consideration went from $10,000 per month to $1,000, due to the adverse possession litigation.

Trust would have thirty days—upon Caton exercising the option—to cure any defects as provided in § 1(b). We conclude that the circuit court wrongly determined that *Waller* controlled the outcome of this case and further erred by finding that the futility exception applied, as a matter of law, under these circumstances.[13]

Caton also seeks to rely on the fifth amendment of the Agreement to establish that the futility exception applies, but we conclude that the fifth amendment does not necessitate a finding of futility as a matter of law. Here, the fifth amendment reduced the monthly consideration that Caton owed to the Trust in light of the adverse possession dispute.[14] But the fifth amendment did not transform the fundamental nature of the Agreement: that Caton must exercise the option in order for the Trust's obligations under § 1(b) to become due. The fifth amendment acknowledged the uncertainty of the adverse possession litigation, noting in the recital to the amendment that "[t]he Overlook Matter *may* not be resolved prior to the end of the Option Period[.]" It further noted that "in the event that the Overlook Matter is resolved to the reasonable satisfaction of the Lessee . . . the option consideration shall revert" back to the original amount of $10,000. While the recital to this amendment suggests it will be difficult to settle the adverse possession dispute within thirty days of the amendment's signing, this payment provision was, thereafter, employed for over a year. Caton continued to pay the reduced sum during that year—from which one could infer he did not find the

---

[13] Other than *Waller*, which is distinguishable from the present case, Caton fails to cite case law where the futility exception was applied, under the circumstances here, to excuse a plaintiff from complying with a contract.

[14] Caton relies on language in the recital to the fifth amendment to argue that exercising the option was futile. But nothing in the recital indicates an intention to modify the relevant terms of the Agreement. Instead, the recital merely explains why the amount of monthly consideration was reduced. *See Virginia Fuel Corp. v. Lambert Coal Co., Inc.*, 291 Va. 89, 101 n.5 (2016) (stating that "[r]ecitals in a contract are not binding on the parties"); *Vilseck v. Vilseck*, 45 Va. App. 581, 589 n.4 (2005) (internal citations omitted) ("If an obvious conflict exists between 'prefatory or recital language' and 'the obligatory provisions' in an otherwise unambiguous contract, Virginia law enforces the latter because 'this is regarded as the more vital and important of the two.'").

Agreement unperformable. We disagree with Caton that the fifth amendment establishes that, as a matter of law, it would be futile and useless for him to exercise the option.

We are also unpersuaded by the circuit court's suggestion that because the adverse possession litigation was still pending at the time the circuit court considered Caton's breach of contract claim, that necessarily meant it would have been useless and futile for Caton to exercise the option. First, Caton cannot receive favorable inferences in support of his summary judgment motion. *Tyger*, 17 Va. App. at 172. Second, this logic is flawed to the extent it fails to appreciate that once Caton declined to exercise the option and instead terminated the Agreement, the Trust, at that point, had no incentive or any reason to settle the adverse possession litigation as fast as possible. So the fact that the adverse possession litigation was ultimately resolved later does not prove that it was useless or futile for Caton to exercise the option in 2021. Moreover, had Caton exercised the option, which he did not, the Trust would have had a significant financial incentive to settle the adverse possession litigation quickly to avoid potential damages to Caton. Again, there is at least an inference, favorable to the Trust, that this is true.

The circuit court erred when it found, as a matter of law, that the futility exception excused Caton's failure to exercise the option. Futility and impossibility-type attacks on contracts are appropriate in the context of an agreement that cannot be consummated, for whatever reason. *See Waller*, 154 Va. 652 (applying futility exception where land sold to third party in violation of the option agreement); *Hous. Auth. of Bristol v. E. Tenn. Light & Power Co.*, 183 Va. 64 (1944) (applying impossibility doctrine where the nonexistence of the subject matter of the contract rendered its performance impossible). Here, the Trust did not repudiate, disavow or renege on the Agreement—and the record does not establish that it would have been futile or useless, as a matter of law, to give it an opportunity to cure the adverse possession dispute (which involved a sliver of the property). In fact, this is precisely what the contract called for—a thirty-day grace period to cure

defects after the option is exercised. *See* Agreement at § 1(b). Thus, we conclude that the circuit court erred in granting Caton summary judgment on the futility question.

     III. Because material questions of fact remain as to futility, we remand for further development of the issue.[15]

"The filing of cross-motions for summary judgment does not, in itself, resolve the question whether material facts remain genuinely in dispute." *Ashland v. Ashland Inv. Co.*, 230 Va. 150, 154 (1988). "A court's duty to ascertain whether facts remain in dispute or whether there are sufficient facts to decide the question presented is not obviated by cross motions for summary judgment." *Central Nat'l Ins. Co. v. Virginia Farm Bureau Mut. Ins. Co.*, 222 Va. 353, 356 (1981).

Here, counsel for the Trust has persuasively argued that the adverse possession dispute over the sliver of land could definitely have settled within thirty days if the option had simply been invoked. The Trust certainly would have had strong financial incentives to settle—including consummating a multi-million-dollar sale and avoiding six-figure damages and attorneys' fees. It is logical that the Trust would have made significant concessions to settle the adverse possession dispute where time was of the essence to resolve the matter within thirty days.

The argument of counsel, however, is not a substitute for evidence. *See Graham v. Cook*, 278 Va. 233, 250 (2009) (argument of counsel is not equivalent to presenting evidence). And the summary judgment record below is undeveloped as to the steps the Trust would have taken to resolve that dispute, and whether the endeavor could have been accomplished swiftly. Further, Caton argues that certain settlements advocated by the Trust—such as the granting of an

---

[15] Based on our resolution of the foregoing issues, we need not reach the Trust's final assignment of error related to Caton's damages award because we conclude that the circuit court erred when it entered judgment for Caton. *See Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (explaining that "[t]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available'"); *Dominion SecurityPlus Self Storage*, 291 Va. at 336 (explaining that a dispositive assignment of error obviates any need to address other assignments of error).

easement—could negatively impact the nature of his planned multi-family housing development.[16]

Moreover, Caton suggests evidence from banks and the Overlook Homeowners Association would show that resolving the adverse possession matter within thirty days would have been highly doubtful—at a minimum, creating another disputed question of fact.

While we agree with Caton that the Trust is not entitled to summary judgment on this record, we note that any argument by Caton that it would be *difficult* to settle the dispute over the small strip of land within the time constraints set by the Agreement does not render the Agreement *incapable* of being performed. *See Goldstein v. Old Dominion Peanut Corp.*, 177 Va. 716, 726 (1941) (explaining that "[i]nconvenience or the cost of compliance, though they might make compliance a hardship, cannot excuse a party from the performance of an absolute and unqualified undertaking to do a thing that is possible and lawful"); *see also* Kent Sinclair, 1 Virginia Remedies § 36-5 (2024) (explaining that "[h]ardship is not generally an excuse for nonperformance, and thus is not normally a defense to an action at law for breach of contract"). If contracts could simply be cast aside every time an obstacle to performance developed, the world of commerce would devolve into anarchy.

Here, because Caton failed to exercise the option, the Trust was never called upon to meet its "condition precedent" to the commencement of the ground lease. However, Caton can excuse

---

[16] We note that the circuit court "inferred" below that the Agreement required the development of the multi-family residences to be pursuant to Caton's plans. The Agreement, itself, does not unambiguously give Caton this measure of control. *See* Agreement § 1(b); *see also* Fifth Amendment (requiring Lessee's *reasonable* satisfaction to restore $10,000 payment sum). Again, it was wrong to give Caton the benefit of inferences to support his summary judgment motion. *See Fultze*, 278 Va. at 88. Moreover, the development plans were created long after the Agreement was entered—and were subsequently altered with multiple alternatives (creating an inference that minor revisions were not prohibited). Relatedly, for purposes of summary judgment review, we find unpersuasive Caton's suggestion that he could unilaterally hold up any settlement between the Trust and Overlook on the theory that the resolution had to be to his liking. He would, for example, have no say whatsoever over a purely monetary settlement; by contrast, Caton could raise objections that a "land swap" might constitute a modification of the option. *See Hart*, 35 Va. App. at 236.

his failure to follow the Agreement's terms *if* it would have been futile to do so. On remand, in order to excuse his failure to invoke the option, Caton must prove futility or impossibility rather than mere impediments to compliance. This would mean that Caton must show that the Trust could not provide the land free of material encumbrances within thirty days of an exercise of the option. Mere difficulty is not enough to overturn the contract terms. And the burden of proof is on the party asserting the impossibility of performance. *See Paddock v. Mason*, 187 Va. 809, 817 (1948).

## CONCLUSION

Caton was always free to walk away from the Agreement. But he could only recover damages upon a breach by the Trust or a clear failure by the Trust to meet required conditions. The circuit court correctly determined that the Agreement required Caton to exercise the option in order to be entitled to damages. The court next determined that a failure to exercise the option could be excused if it would be a useless act as in *Waller* (where the would-be seller repudiated the deal by selling the subject land to a third party such that they could no longer perform the agreement). The circuit court erred, however, by granting Caton summary judgment on the ground that the futility exception excused Caton's failure to exercise the option here. On this record, Caton was not entitled to summary judgment. At this juncture, neither is the Trust. We reverse the summary judgment award of damages and attorneys' fees to Caton and remand to the circuit court for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*